GEORGE W. FERRIS, appellant, v. AMOS WARD et al., County Commissioners of Knox county, appellees.

*Appeal from Knox.*

In proceedings under the Road Law of 1841, for obstructing a road, it is not necessary to produce record evidence of the steps taken preliminary to the location, the statute not requiring that they should be entered of record.

A road is to be considered as established, and in contemplation of law, opened, when the proper Court have approved of the report of the viewers, and sanctioned the location.

When one obstructs a road which is used by the public, for even the shortest period of time, he does it at his peril; for if it should be made to appear that such road was legally established, he would be accountable, whether he had actual knowledge of the fact or not.

A notice by a supervisor required a person to remove two certain rail fences, built by him across a public road, (describing it,) which were an obstruction, and specified the particular place of the obstruction, by stating the direction of the fences made by him: *Held*, to be sufficient.

In estimating the amount of a verdict to be rendered for obstructing a public road, the jury may count fractions of a day.

A claim for damages occasioned by the location of a public road, is not to be presumed, but must be expressly made, and at the proper time, so that if the State or county thinks the payment of damages too great a sacrifice for the benefits to be obtained by having a road, may abandon the project, or locate it elsewhere.

A supervisor is a competent witness in a proceeding against a person for obstructing a public road.

Penalties which accrued under the Road Law of 1841, are not repealed by the Revised Statutes.

A supervisor may institute proceedings to recover the penalties for obstructing roads given by the Road Law of 1841, before justices of the peace.

THIS action was originally brought before a justice of the peace of Knox county, to recover the penalty provided by

the Road Law of 1841 for an obstruction. The defendant recovered a judgment for costs before the justice, against the County Commissioners of Knox county, from which an appeal was taken by them to the Circuit Court. At the November term 1845, the cause was heard before the Hon. Norman H. Purple and a jury, when a verdict and judgment were rendered against the defendant, Ferris, for $90.

The various proceedings in the cause will appear in the Opinion of the Court.

The cause was submitted in this Court upon the written arguments of *C. K. Harvey*, for the appellant, and *J. Manning*, for the appellees.

The Opinion of the Court was delivered by

KOERNER, J.   This action was brought by the appellees as County Commissioners of Knox county, on the 13th day of August A. D. 1844, agaist Ferris, the appellant, before a justice of the peace of the said county, by the issuing of a summons to summon the defendant, Ferris, to answer the County Commissioners on the complaint of John L. Clay, supervisor of Road District No. 34, for obstructing a certain public road in said district, by fencing up the same, and permitting the same to remain for a long length of time, to wit: for the space of 200 days, after having been ordered to remove the same by the said John L. Clay. On the 24th day of August, the defendant, Ferris, having removed the case to another justice of the peace, recovered a judgment for costs, against the County Commissioners. On the 4th day of September, A. D. 1844, the County Commissioners appealed to the Circuit Court of Knox county, and filed an appeal bond.

On the first day of the November term of the said Circuit Court A. D. 1845, the defendant, Ferris, moved the Court to dismiss the suit, which motion was overruled, and the defendant excepted. The defendant then moved to dismiss the appeal, which motion was in like manner overruled and exceptions taken. The plaintiffs then proved to the jury impanneled in the case, that at the June term, 1841, of the

County Commissioner's Court of said county, John L. Clay presented the petition of thirty five voters of said county, for a road running from the north west of section 30 in township 11, N. 1 E. easterly on the section line betweeen sections 19 and 30, till it intersected the Knoxville and Galesburgh road, at or near sections, (blank) of township 11 north, 2 east. The defendant's name was signed to the petition. It was then proved by the record of the County Commissioner's Court, that three viewers were appointed who returned a plat of the said road, as follows:

whereupon the said County Commissioner's Court entered the following order.

"Ordered, that the above road be established in accordance with the foregoing plat, report and field notes, and that the width thereof be fifty feet, and that the clerk refund to John L. Clay the $3·00 deposited." It was then proved, that the said viewers stuck stakes every half mile in said road, three of which were upon the defendant's land; that the road was cut out to within three or four miles of the defendant's farm; that there was a track on or near the line of said road through the defendant's farm, which was smooth prairie, caused by the passing of carriages. Some timber was hauled near the defendant's land, to bridge a slough. The defendant said he had done one day's work on the road, and thought that that and giving the land was enough for him. In March, 1843, the defendant was appointed supervisor of the said road district, and while he was such supervisor, in May, 1843, built a fence across the line of said road, running from section 19 to 30. The supervisor, Clay, who instituted this suit, was offered as a witness, excepted to, but was admitted, and

testified that having been appointed supervisor in March, 1844, he delivered to the defendant in April, 1844, a notice as follows:

"Mr. George W. Ferris, Sir, you are hereby ordered to re- move two certain rail fences, built by you across, and which are now an obstruction to a certain public road, known as the road from the south west corner of section 19, in town- ship numbered 11 north of range numbered one east of the fourth principal meridian, thence east on the section line, till it intersects Galesburgh and Knoxville road, which said fences are the one erected from the north east the other from the north west corner of the north east quarter of section 30, and running to the one to the one to the south east quar- ter of section 19, in said township.

(signed)          John L. Clay, Supervisor
          of road district, No. 34, in Knox county Ill."
to the giving in evidence of which, exception was taken. The fences were continued till the time of trial. The de- fendant then prayed the Court to instruct the jury as in case, of non-suit, which was refused, and exception taken. The defendant then proved that he was the owner in fee of the land when the fences were built; that on the 13th September, 1843, his damages on account of said road running through his land, were assessed at $95·00, which damages the County Commissioners at their next term refused to pay. The above is all the evidence. The Court instructed the jury, "that if they find that the defendant obstructed the road, and continued it after notice to remove it, and that it was opened through his land by his consent, or without objection prior to the time of his procuring the damages to he assess- ed they will find for plaintiff, the verdict not exceeding one hundred dollars.

The jury returned a verdict of $90.00. A motion for a new trial, for the reasons that the verdict was against the evi- dence, against law, and improper instructions were given, was overruled and exception taken, and judgment.

The errors assigned, are: 1st, in overruling the motion to dismiss the suit; 2d, the motion to dismiss the appeal; 3d,

Ferris *v.* Ward *et al.*

in admitting in evidence the road plat; 4th, in admitting in evidence the defendant's statement about giving land; 5th, in permitting Clay to testify; 6th, in admitting in evidence the notice; 7th, refusing to instruct the jury to find as in case of nonsuit; 8th, in overruling the motion for a new trial; 9th, in giving judgment for the plaintiff, for $90·00 and costs.

It will be perceived that the errors assigned upon this record are quite numerous. It becomes necessary to examine them all, though they will not be taken up in the order in which they are assigned.

The errors assigned respecting the decisions of the Court in admitting the road plat in evidence, as also the defendant's statement concerning the road in question and his agency therewith, and in the admission of the order of supervisor for a removal of the alleged obstruction, and in overruling the motion to instruct as in case of non-suit, as also the motion for a new trial, may be all considered under one head.

The plaintiffs proved that the road had been properly petitioned for, that the County Commissioners' Court had acted upon this petition, had appointed viewers to view and locate the same; that they had done so, and marked the location by setting stakes, &c. &c. They further prove that the viewers made a return of their doings to said Court, and filed a plat of the road located by them together with the field notes, which plat shows that the said viewers located said road in accordance with the prayer of the petitioners. Upon this report being made, the Court ordered that the above road be established in accordance with said plat, report and field notes, and that the width thereof be fifty feet.

It is contended that this evidence was not sufficient to show that said road was really opened, as it does not appear that the County Commissioners' Court ordered the supervisor of the proper road district to do so, and also because the plat returned is not sufficiently explicit and certain. The twelfth section of the Road Law of 1841, page 236, under which law the proceedings in this case were commenced, simply provides that the County Commissioners, upon a

road being located, (established,) shall immediately cause the supervisor of each district through which such road shall pass, to be notified of such location. The ninth section provides, that the clerk, in such a case, shall furnish the supervisor with a list of the petitioners, with a view to make those of the petitioners who reside out of said district perform, nevertheless, road labor on said road. It does not seem necessary that any record evidence of these steps should be preserved. The road is established, and, in contemplation of the law, opened, when the Court have approved of the report, and have sanctioned the location. If, in pursuance of such an order, the road has been actually opened by the supervisor, has been worked upon, and used for a considerable time, as the proof shows in the present case, it would be very singular indeed, if its legality could be contested on the ground, that there was no record evidence to show that the Court actually notified the supervisor of its having been established. It might as well be urged that such road was illegal, because the clerk did not send a list of the petitioners to the supervisor.

The road plat is, in our estimation, sufficiently certain, and if it was not, it certainly could be made certain by the field notes which accompanied it. It shows clearly that a portion of the road run on the sectional line between sections nineteen and thirty, and it was on that portion that the obstruction was alleged to have been made. Indeed, we cannot discover any ground at all for the whole of this objection, particularly when we reflect that the defendant for a while acted as supervisor on said road, worked on it, and according to his own statements, had given his own land for the purposes of establishing said road, after having petitioned for it.

The evidence of the defendant's statements just mentioned, as also that he had worked on it, and that he had sought to obtain permission from the supervisor who then acted, to raise the very obstruction, for which he is sued now, was perhaps superfluous, as it only tended to show his actual knowledge of the opening, &c. &c. It was not strictly ne-

cessary that such actual knowledge should be brought home to him. When one obstructs a road which is used by the public for ever so short a time, he does it at his peril; for if it should turn out, that such road was legally established, he would be accountable, whether he actually knew that fact or not. The admission of this evidence under the circumstances of this case when it was clearly shown, as we think it was, that the road was legally established and opened, could not have been prejudicial to the defendant. But we need hardly have considered this branch of the objection to the evidence, since the record does not show that the defendant objected to its introduction.

The order or notice to remove the obstruction, given to the defendant by the supervisor, is objected to on account of its alleged uncertainty. The language of the Road Law of 1841, respecting obstructions is as follows: "If any person shall obstruct any public road by falling a tree or trees across the same, by encroaching upon or fencing up the same, &c. &c., he shall forfeit, &c. after he shall have been ordered to remove the same, by any supervisor, &c. &c."

Now, although this is a proceeding penal in its nature, entitling the defendant to have his liability established beyond a reasonable doubt, yet it appears to us very plain, that in this case the officer had strictly and amply complied with the pre-requisites of the law. In reason, nothing more can be required, than that the obstructing party should be made to understand by the order, what place he is charged with having obstructed, so that he might be enabled to examine into the matter, and to ascertain his real rights respecting it.

The order in question informs the defendant, in the first place, specially of the nature of the alleged obstruction. It gives a description of the road in conformity with the survey thereof. It points out the precise place of the obstruction itself, by stating the direction of the strings of fences, made by the defendant, and which cause the obstruction. We really deem this order to be as specific and full, as could be desired. It is said, that the width of the road is not specified in the order, nor that it does appear from it, how far

defendant was to remove his fence, all of which it is contended, was necessary to have been stated in the order. Authorities are cited in support of this point. (19 Johns. 359; 22 Wend. 135; 2 Hill, 473.) Without stopping to inquire, whether these authorities go as far as it is insisted, and whether if they did, it would be safe to follow them in our State, under the circumstances peculiar to a newly settled country, it is enough to say, that in this case the defendant was informed (and that actually was the case,) that he built his fences across the whole of the road. No matter, then, how wide the road was, he was certainly obstructing it, and the question how far he had encroached upon the public highway did not arise, since he had shut it up totally.

It is objected to the finding of the jury that no possible state of facts could have sustained it, as the amount proved was $90·00. Without following up the calculations of counsel by which he shows that the verdict must have been either $88·00 or $91·00, we will merely remark that the jury was justified in a case like this, to count fractions of a day, which of course cannot be but favorable for the persons accused, and upon this hypothesis the verdict can be easily explained.

An objection is also taken in the argument, that there was no proof in what Road District the obstruction was erected, but this we hold to be wholly untenable, as also another one, that the plat returned by the road viewers, was signed by only two of them. This latter objection has no foundation in the record, which simply states that the said viewers returned a plat of said road as follows, &c. &c. From this statement, we have certainly no right to infer that it was signed or returned by two only.

The ground assumed by the counsel for the defendant below, that this road could not be considered as legally established because the County Commissioners had failed to pay the defendant his damages as assessed according to law, which he claimed to have sustained by reason of the opening of this road over his land, cannot be maintained. It is very true that he was not bound to permit the road to run

over his land, before he was paid for his damages, if any he had sustained; but surely, after the road was opened in 1841, and after he had worked on it, and supervised it, and had given the land for it as he himself stated, he had no right to claim damages in September, 1843. A claim for damages is not to be presumed, but must be expressly made, and at the proper time, so that if the State or county thinks the payment of damages too great a sacrifice for the benefits to be obtained by having a road, may abandon the project or locate it somewhere else.

Having disposed of these numerous objections arising under the first class of the errors assigned, we shall proceed to notice in as brief as possible a manner, those which are said to have been committed by the Court in admitting the testimony of Clay, he being, as it is alleged, incompetent, and in overruling the motions both to dismiss the case and the appeal. Clay, the supervisor, was neither the plaintiff on the record, nor the substantial plaintiff. The suit is in the name of the County Commissioners, and not in their name for his use. We cannot see that any rule of law was violated in permitting him to testify. As no part of the penalty either directly or indirectly goes to him, he was not an interested witness; not as much so as an informer is, who is commonly entitled to a portion of the recovery, and yet it is well settled that this class of persons are competent witnesses.

It remains now to consider the errors which are assigned, as arising under the decisions of the Court, in overruling the motions to dismiss the case, and to dismiss the appeal. No reasons being assigned for the latter motion, we presume that it was urged upon the same ground that was assigned for the motion to dismiss the cause, and we therefore proceed to an examination of the points presented by the decisions of the Court on the last mentioned motion. The counsel for the defendant below, insists first, that the law of 1841, under which these proceedings were instituted, was repealed before the cause was tried in the Circuit Court. It is necessary to examine the different laws passed by the legislature of

Ferris *v.* Ward *et al.*

1844–5, which bear upon this point. Such an examination, it must be confessed, appears at first but little satisfactory, and it requires much patience and labor to extricate one's self from this labyrinth of legislation.

The Revised Statutes of 1845, under the Chapter of "Revised Statutes," pages 468, 470, repeal the road law of 1841, not only once, but twice. By the 37th section of the same chapter, it is provided that the Revised Statutes shall take effect, 10th September, 1845, and that all Acts and parts of Acts, consolidated or included in the Revised Statutes, or therein repealed, shall be in force until said day, &c.

By virtue, then, of this section, the road law of 1841, though intended to be hereafter repealed, remained in force until 10th of September, 1845.

The 40th section of the same chapter provides as follows: "No suit or prosecution pending at the time of such repeal, for any offence committed, or for the recovery of any penalty or forfeiture incurred under any of the Acts of this chapter repealed, shall be affected by such repeal." This 40th section, by a proviso in the 37th section of said chapter, went into force at the close of the session, March 6th, 1845.

So far the matter is plain enough. The penalties, &c., incurred under the old road law were saved, before it was repealed by virtue of the Revised Statutes. But the legislature passed at the same session various other laws, not incorporated in the Revised Statutes, and amongst others, an Act amendatory of the Act of 1841, concerning roads. (Rev. Stat. Appendix, 1845, p. 592.) And the Revised Statutes provide, (22 section, same chapter,) that when the provisions of any law passed at the present session, (1844–5,) and published with the chapters composing the Revised Statutes, without being incorporated in the same, shall contravene or be inconsistent with the provisions of such chapter, the provisions of such law shall prevail.

The 8th section of this session law, which was to be in force 1st June, 1845, purporting to amend the road law of 1841, if literally understood, repeals the law of 1841, and in fact would seem to repeal itself. Giving it this literal con-

struction, it might be contended that the law of 1841, stood thereby repealed, and as the saving clause speaks of laws only repealed in the revised laws, it could not apply to laws which are repealed independent of the Revised Statutes. This would be too narrow and technical a construction. The saving clause means to affect all laws, which were to be repealed on the 10th of September. 1845. It went into force in March, and why should it not also affect the session law, which went into effect in June, if the latter is really a repeal of the road law of 1841, which road law was also intended to be repealed by the Revised Statutes. If the session law repeal the road law, then it contravenes the Revised Statutes, only in so far that it fixes the time of repeal at the 1st June, instead of 10th September, 1845. But it does not contravene in terms, or by any reasonable construction, the saving clause, which intends to operate upon certain laws, described in it as laws repealed by the Revised Statutes, clearly embracing thereby the road law of 1841. It certainly meant to save the penalties under the road law of 1841, about to be repealed by virtue of the Revised Statutes, and the fact that the same law was also repealed, as it is alleged, by another not contained in said statutes, cannot, in reason, defeat this object.

We now turn our attention to the last point made under this assignment of error, which is, that the justice of the peace had no jurisdiction in this case, and the supervisor no authority to institute the suit in the manner adopted by him. The want of jurisdiction and authority is attempted to be shown by a long train of reasoning, which is not without plausibility. It may be briefly summed up thus: By the 31st section of the law of 1841, supervisors are authorized to bring suits before justices of the peace, for all fines and forfeitures imposed by this Act, which are intended to come into the hands of such supervisor for road purposes, and to collect, disburse and account for the same, suing in the name of the County Commissioners. But the fine imposed under the 8th section of the Act, for obstructing a road, is one which the law does not direct how it should be collected, and

Ferris *v.* Ward *et al.*

consequently it flows into the county treasury, like fines, for instance, which are collected under indictments preferred under this Act. As the supervisor has not the collection of the fine in question, it follows that he cannot sue for it.

Such a construction, it is apparent, would defeat the object of the legislature. It is not perceived, how a person obstructing a road, could ever be made to answer in a fine, if the supervisor could not sue him in the manner pointed out by the 31st section. The law is perfectly silent as to any other mode of proceeding, except in cases where it provides for indictments, which is not the case where it speaks of obstructions. The 20th section of the law provides, that all fines and forfeitures incurred under the provisions of this Act, shall be applied to the improvement of roads within the bounds of such road district, wherein such fines and penalties may have been incurred. Now, it certainly requires no forced construction to say, that in the present case, the fine collected by the Supervisor would, or at any rate, might properly come into his hands to be disbursed, as the fine has been incurred in his district. If it may legally come into his hands to be disbursed, it follows that he may sue for it. This construction upholds the law, is by no means a strained one, and is such a one as Courts have always found it their duty to adopt, in order to give meaning and effect to the will of the legislative power. Taking this view of this branch of the case, we are of opinion, that the justice had jurisdiction, and that the supervisor proceeded properly in suing before a justice, in the name of the County Commissioners, for the recovery of the fine for obstructing a public highway.

Having examined all the points which we believe have been made by counsel for appellant, we have not been able to find any error in the decisions of the Court below, and we therefore affirm the judgment with costs.

*Judgment affirmed.*