THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellee, *v.* IVY THOMAS *et al.*, Defendants-Appellants.

Fifth District   No. 77-160

Opinion filed March 14, 1978.

Preston K. Johnson, Sr., and Preston K. Johnson, Jr., both of Johnson & Johnson, of Belleville, for appellants.

William J. Scott, Attorney General, of Springfield (Ralph D. Walker, Glenn A. Altman, and Roy Frazier, Assistant Attorneys General, of counsel), for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of St. Clair County quieting title to certain property in the plaintiff, Illinois Department of Transportation. In 1974, the Illinois Department of Transportation commenced to survey and improve U.S. Route 50 (SBI Rt. 12) to a full width of 66 feet at its point of bisection with Old Collinsville Road in the eastern part of St. Clair County, or at the northeast corner of the S.E. ¼ of Section 27, T2N, Range 8 W. In response to an injunction suit, subsequently dismissed by agreement of the parties, filed by nearby property owners affected by the highway improvements, the Department instituted an action to quiet title in which it sought a declaration that it was the owner of a highway easement, known as U.S. Route 50, and that the width of the easement was 66 feet at its point of bisection with Old Collinsville Road. In their answer, the defendants, as landowners in the northwest and southwest quadrants of that intersection, denied the plaintiff's allegations so far as the easement's width exceeded 33 feet; the defendants admitted that the center line of the highway followed the center line of Section 27, but claimed that the plaintiff's easement did not extend beyond 16½ feet on each side of the center line. The defendants also filed a counterclaim in which they alleged that the plaintiff's conduct in exercising control over the excess 33 feet was an exercise of its eminent domain power and, therefore, prayed that a jury determination be made of the damages due them. Following a bench trial, the lower court entered judgment in favor of the plaintiff and against the defendants on the complaint and counterclaim from which judgment the defendants appeal.

At trial, the plaintiff contended that its title to the 66-foot-wide highway easement was based on an act of the legislature entitled "An act to lay out and permanently establish the road from the Wabash River, near Vincennes, to the Mississippi River, opposite St. Louis," approved January 23, 1829, in force November 23, 1829 (1829 Ill. Laws 136). By that act seven commissioners including three from St. Clair County, were appointed to lay out, survey and permanently locate the road and to file a plat of the highway with the county commissioner's court of each county through which it passed. Section 4 of the act provided that the road when laid out and surveyed would be and remain a State highway, four poles wide (66 feet), to be kept in repair through each county. The plaintiff

introduced into evidence copies of the original highway plat and field notes made by the commissioners. On each of these documents the highway was shown by a line, running in an east-west direction through the center line of Section 27, with no width being recited or otherwise indicated. Also received into evidence was a copy of the record of the St. Clair County Court dated December 7, 1829, which recited that two of the appointed highway commissioners had that day filed a plat of the St. Louis-Vincennes highway, together with their field notes, and had been duly paid for their work in laying out the highway. There was no evidence adduced by the plaintiff indicating that the land through which the highway ran had been donated to or paid for by the State; however, there was testimony that it was common for landowners in the early 1800's to donate their land and labor in exchange for a traveled and maintained highway near their property.

The defendants contended, however, that neither themselves nor their predecessors in title had ever recognized the plaintiff's highway easement as extending to a width of 66 feet at or near the intersection. While unable to show conclusively title in themselves to the excess 33 feet, the defendants submitted evidence, both documentary and testimonial, of their own use, possession and control of the disputed 33 feet and the plaintiff's nonuse of the same. In this regard, the defendants contended that for many years after the highway had been laid out, even after an 18-foot pavement with a 6-foot shoulder had been constructed in 1920, the remaining footage had been treated as their property or that of their predecessors in title by both themselves and the plaintiff. The defendants also challenged the sufficiency of the highway plat filed by the commissioners in 1829, arguing that the omission of any recital or other indication of the highway's width rendered the plat vague and incomplete and, thus, inadequate to accomplish a statutory dedication. Moreover, the defendants contended that the plaintiff's failure to present clear and unequivocal proof that their predecessors in title had donated the land to the State, or been compensated for the same, indicated that the land, to the extent then used, had been taken without due process of law contrary to the 1818 Illinois Constitution and the United States Constitution. Based on this argument, the defendants further contended that the plaintiff's exercise of control and dominion over the excess 33 feet in 1974 constituted a taking of their property without due process of law as guaranteed by the 1970 Illinois Constitution and the United States Constitution. Having heard and considered all of the evidence, the lower court decided the issues in favor of the plaintiff and entered an order holding the full and complete width of the plaintiff's highway easement to be 66 feet, based on the 1829 statute, free and clear of the defendants' claims.

The issue presented for review is whether the plaintiff's highway easement, known as United States Route 50, is 66 feet wide at or near its bisection with Old Collinsville Road insofar as it affects the defendants' property at that location.

■■■ We initially note that there are but three ways in which a public highway may be established: (1) by condemnation in the mode prescribed by statute; (2) by grant, which may be established by producing the deed making the grant, or by long continued use for the statutory period which implies a previous grant (prescription); and (3) by dedication to the public by the owner of the soil (*Koch v. Mraz,* 334 Ill. 67, 165 N.E. 343 (1929); *Grube v. Nichols,* 36 Ill. 92 (1864)). The primary focus of the defendants on this appeal is on the third method by which mode they contend the highway was established in 1829. The defendants argue that the validity of the plaintiff's claim of right to the excess 33 feet is dependent upon the type of dedication, statutory or common law, which in turn they assert is determined by the legal sufficiency of the plat filed by the commissioners pursuant to the 1829 statute. Generally, a statutory dedication is created by a particular form of the instrument recorded, while a common-law dedication may be by a grant or other written instrument or may be evidenced by acts and declarations without a writing (*Hooper v. Haas,* 332 Ill. 561, 164 N.E.2d (1928)). The legal distinction between the two types of dedication is that by a statutory plat the fee to the premises purported to be conveyed is vested in the public, subject to its acceptance, while under a common-law plat the fee of the tract purported to be conveyed remains in the dedicator, burdened only with an easement over the way in question and subject to the acceptance of the easement by the public (*Clokey v. Wabash Ry. Co.,* 353 Ill. 349, 187 N.E. 475 (1933)).

The defendants contend that the dedication of the highway in 1829 cannot be construed to be a statutory dedication because of the vague nature of the plat filed by the commissioners in that year. Relying on *Pilgrim v. Chamberlain,* 91 Ill. App. 2d 233, 234 N.E.2d 75 (3d Dist. 1968), the defendants argue that the lack of any recital or indication of the width of the highway in the plat rendered the attempted statutory dedication ineffective and thus operated as a common-law dedication. By construing the dedication to be a common-law dedication, the defendants assert that the width of the highway must be determined by the boundaries established over the years by the adjoining landowners. The plaintiff, however, argues that the disputed highway was laid out in strict compliance with the 1829 statute and that, unlike *Pilgrim,* the commissioners were given no discretion in determining the width of the highway, but instead were mandated to lay out the highway four rods wide. Thus, the plaintiff contends that the commissioners were not bound

to show the width of the highway on the plat and that this omission does not defeat a statutory dedication. While we agree with the plaintiff that the cases are distinguishable and that the plat filed by the commissioners completely complied with the 1829 act, we cannot agree that the filing of the plat operated as a statutory dedication of the highway. Moreover, we are of the opinion that there is insufficient evidence in the instant cause to support a claim that the highway was established in 1829 by dedication.

■■■ In order to constitute a sufficient dedication there must be (1) an intention on the part of the proprietor of the land to donate the land to the public use, (2) an acceptance by the public and (3) clear and unequivocal proof of the first two elements. (*People ex rel. Markgraff v. Rosenfield*, 383 Ill. 468, 50 N.E.2d 479 (1943); *City of Chicago v. Borden*, 190 Ill. 430, 60 N.E. 915 (1901).) In regard to the first element, it is clear that only the owner of land can make a dedication. (*Harding v. Town of Hale*, 83 Ill. 501 (1876); *Gentleman v. Soule*, 32 Ill. 271 (1863).) The intention to dedicate is the vital, controlling element in such a grant. A dedication is not an act of omission to assert a right, but it is an affirmative act of mind of the donor arising from the active, and not the passive, condition of the mind of the owner of the land. (*People ex rel. Markgraff v. Rosenfield; Grube v. Nichols*, 36 Ill. 92 (1864).) In the instant cause, the record does not contain that clear and satisfactory evidence of an intention on the part of the owners, the defendants' predecessors in title, to make a dedication of the land to the public use that the cited authorities seem to require. We note that in *Pilgrim v. Chamberlain*, relied on by the defendants, the landowner's intention to dedicate was not in issue because the road in question in that case had been petitioned for by the adjoining landowners. The issue presented in *Pilgrim* was whether the local road authorities had sufficiently complied with an 1857 dedication statute. Our finding that there is insufficient evidence of an intention to dedicate necessarily invalidates a claim that the plat filed by the commissioners pursuant to the 1829 statute effectuated a statutory dedication. Statutory provisions relating to plats merely provide a different mode by which an owner's intention to dedicate his land may be carried out. (See Ill. Rev. Stat. 1975, ch. 109, par. 1 *et seq.*) Moreover, the plat as a mode of conveyance was unknown to the common law and the law of Illinois prior to the passage of an 1833 statute in regard to plats. See 1833 Ill. Laws 599.

■■■ The plaintiff maintained at trial, and now on appeal, that its claim to the 66-foot-wide highway easement is bottomed in the 1829 enabling act of the legislature establishing the highway. The plaintiff further contends that the plat filed by the highway commissioners pursuant to that act fully complied with all of the mandatory provisions of that statute and that the width of the highway is determined by its designation in the act itself. We agree. Absent a provision in the highway statute requiring

the commissioners to determine or establish the width of the highway in the plat, they were under no duty to do so. (See *Commissioners of Highways v. Harrison,* 108 Ill. 398 (1884); *Pearce v. Town of Gilmer,* 54 Ill. 25 (1870).) It was obviously the commissioner's intention that the line drawn on the plat, through the centerline of Section 27, was to represent the centerline of the highway which by the act was established as four rods wide. Therefore, the outer boundaries of the highway are located at a distance of two rods, or 33 feet, from the centerline of the highway as shown on the plat. Moreover, the plaintiff was not barred by the lapse of time from claiming the full width of the highway as authorized by the act establishing it. The fact that it was evidently opened to its entire length and traveled by the public protects the public's right to the full width and repels any presumption that might otherwise have arisen of abandonment. *Taylor v. Pearce,* 179 Ill. 145, 53 N.E. 622 (1899).

Having determined that the highway was established by statute, we now turn to the question of the propriety of the State's highway condemnation procedures under the statute in force in 1829. By section 18 of the act entitled "An act concerning public roads," in force March 1, 1827 (1827 Ill. Laws 345, §18), it was provided:

> "Where any public road, which has been, or hereafter may be established, shall be oppressive or injurious to the owner of any land through which the same may pass, it shall be the duty of the county commissioner's court, upon complaint of the person aggrieved, to cause that part of the road so complained of, to be again viewed by three disinterested persons; upon whose report the said court shall cause that part of the ground so complained of, to be located upon other ground, if the same can be done, without disadvantage to the public * * *."

It was provided in section 8 of the Road Act (1827 Ill. Laws 341-42, §8), that all able-bodied males in a certain age group were to perform the necessary labor and repair work on the public roads, but not to exceed five working days in one year. While both of these sections may seem unjust based on current standards, it should be noted that in the 1820's a public highway, kept in repair, was a rare object. Hence, it is not unreasonable to assume that there were few landowners who complained when a highway was laid out through a part of their property. Because of the abundance of vacant land and that virtual nonexistence of travelable roads in those years it certainly was logical to reroute a public road in lieu of paying damages to a complaining landowner.

This is not to say that the constitutional limitation on the State's exercise of its eminent domain powers (Ill. Const. 1818, art. 8, §11) guaranteeing that private property could only be taken for public use with the consent of the legislature and upon making just compensation to the owner was ignored; it was just in a different framework that the damages were

measured. Our supreme court held in *State v. Evans,* 3 Ill. 208 (1840), that the benefits of condemnation were the probable compensation contemplated by the 1818 Illinois Constitution. Thus, it was reasoned that the payment for the land taken by condemnation for highway purposes was by the benefits conferred upon the owner by the contemplated improvement. The court in *Evans* considered an 1833 right of way act (1833 Ill. Laws 534) which contained a similar condemnation procedure to the one in question, but also containing a provision providing for the payment of damages to complaining landowners as determined by three appointed householders. Examining the method of ascertaining damages under the statute the court stated:

> "The criterion of damages is the same in either mode of assessment, and is clearly pointed out by the oath required to be taken by the assessors, which is, 'that they shall assess the damages which they shall believe such owner or owners will sustain, over and above the additional value which such land will derive from the construction of such road.' " (3 Ill. 208, 209.)

The *Evans* court concluded that justice required that the additional value given to the land of an individual by the construction of a public road over it be taken into consideration; and that if the assessors determined that it was equal to or greater than the estimated damages the owner would sustain, the owner would recover nothing. This interpretation of the term "compensation" continued even after the passage of the 1848 Illinois Constitution. See *Alton & Sangamon R.R. Co. v. Carpenter,* 14 Ill. 190 (1852).

The concept of placing the burden on the owner of the land to go forward and show the damages that he would sustain by the construction of the road was upheld even under later statutes (see *County of Sangamon v. Brown,* 13 Ill. 207 (1851)). Commenting on the practice of requiring the landowner to take the affirmative in regard to damage claims, the court in *Ferris v. Ward,* 9 Ill. 499, 507 (1847), stated:

> "A claim for damages is not to be presumed, but must be expressly made, and at the proper time, so that if the State or county thinks the payment of damages too great a sacrifice for the benefits to be obtained by having a road, may abandon the project or locate it somewhere else."

■■ It is our opinion, after considering the foregoing authorities, that the State's eminent domain procedure under the 1827 Road Act, in force when the highway in question in the instant cause was established in 1829, was not inherently unfair. We further believe that it is reasonable to conclude that the defendants' predecessors in title did not object to the establishment of the highway in 1829 as there is no indication in the record that they ever complained to the commissioners. Hence, we are

compelled to conclude that the statutory condemnation procedure was complied with and that the property of the defendants' predecessors in title was not improperly taken. Accordingly, we find that the filing of the plat by the commissioners with St. Clair County court on December 7, 1829, being the last step required under the 1829 highway statute, established the highway, now known as U.S. Route 50, to a full width of four rods, or 66 feet.

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES and G. J. MORAN, JJ., concur.