FRED CRANDALL, Plaintiff-Appellee and Cross-Appellant, *v.* COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 15659

Opinion filed February 15, 1980.

William F. Meehling, of Meehling and Rich, of Marshall, for appellant.

Zollie O. Arbogast, Jr., of Casey, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

The appeal and cross-appeal in this case present problems concerning adjustment and settlement of first-party claims for automobile losses. We affirm the trial court.

Plaintiff's automobile, a 1972 Chrysler Newport, was damaged beyond economical repair in a collision. The vehicle was equipped with a variety of extra equipment such as radio, automatic transmission, power steering, power brakes, air conditioning and a vinyl roof. It had relatively high mileage but its general condition was variously described as "good," "excellent" or "topnotch."

Defendant admitted liability but disputed the amount. Various offers were made to plaintiff over a six-month period from January to June 1975. All such offers were taken from a publication described as the National Auto Dealers Association Book. The book lists the average retail value of automobiles of all makes and styles and further lists variables for extra equipment. These increase the average price. Other listed variables, such as high mileage, decrease the average price. Defendant's constant and continuing offer for plaintiff's automobile was $1,775 being the NADA book average price, plus allowance for a vinyl roof, less a high mileage deduction, and a $25 deductible. Plaintiff refused the offer.

In July 1975, plaintiff filed suit to recover the value of his automobile plus interest, and attorney's fees, for vexatious refusal to settle. A bench trial was held in the circuit court of Clark County in June and July 1978. The trial court found in favor of the plaintiff in the sum of $2,575 as the value of the automobile but refused to allow interest or attorney's fees. Defendant appealed the judgment as to value, and plaintiff cross-appealed the issue of interest and fees.

Central to our decision is an interpretation of Rule 7 of the regulations of the Illinois Department of Insurance. The pertinent parts of that rule read as follows:

"Section 7. [*Implements section 154.3(d) of the Illinois Insurance Code.*]

A. When the Insurance policy provides for the adjustment and settlement of first party automobile total losses on the basis of actual cash value or replacement with other of like kind and quality, one of the following methods must apply:

THE COMPANY MAY ELECT TO OFFER A REPLACEMENT VEHICLE.

(1) A replacement vehicle is defined as a specific, comparable, and available vehicle that is both furnished and paid for by the company, with no additional cost to the insured other than his deductible.

In the event the insured elects a cash settlement instead of such replacement vehicle, the company need pay only the amount it would have otherwise paid for the replacement vehicle, including all applicable taxes and license fees. As a condition precedent to *this method of settlement, the company must first offer the* replacement vehicle to the insured and the insured must reject the offer. Both the offer and rejection must appear in an examination of the file.

THE COMPANY MAY SELECT A CASH SETTLEMENT.

(2) A cash settlement must be based upon the retail value of the automobile as published in a generally recognized source that is uniformly and regularly used by the company. Any deviation from this procedure must be supported by documentation that gives detailed information about the automobile's condition. Any deductions from retail valuations must be measurable, discernible, itemized, and specified concerning dollar amount, and they shall be appropriate in amount.

\* \* \*

(3) The company shall provide a reasonable written explanation to the concerned parties when cash settlement offers, as set forth in (1) and (2), are made. The explanation must specify the dollar amount of the base figure and identify the actual source. Any additions or subtractions from the base dollar figure must be identified and explained."

Section 154.3(d) referred to in promulgating the regulation has been replaced by sections 154.5 and 154.6 of the Illinois Insurance Code (Ill. Rev. Stat. 1977, ch. 73, pars. 766.5 and 766.6). It dealt in substance with improper claims practice, particularly not attempting to settle in good faith when liability was clear. No issue is raised that Rule 7 does not apply in the instant case.

At the risk of oversimplification, we discern the positions and

arguments of the parties to be that the defendant believes that Rule 7 sets a ceiling over which no settlement can be made, while the plaintiff regards Rule 7 as a floor under the same circumstances. To carry the metaphor one step further, we regard Rule 7 as neither a ceiling nor a floor, but as a bench mark.

■ A fair reading of the rule demonstrates that figures above and below the publication value are clearly contemplated. Subparagraph (2) speaks of "any deductions from retail valuations," and subparagraph (3) speaks of "any additions or subtractions from the base dollar figure." The purpose of the rule in our opinion was to fix in the abstract a generally recognized and accepted base value for an average automobile, and then adjust that figure upwards, or downwards, depending upon the particular features and condition of the specific automobile in question. We find nothing in the language of the rule which makes it ironclad either as a maximum or minimum settlement figure, but rather we find it dictates flexibility for both the insurer and the insured.

We believe our position is reinforced by material cited to us by the defendant, a publication of the Department of Insurance entitled Illinois Insurance. In Volume X, No. 5, September-October 1979, at page 4, it is said, "Because the retail value shown in a published source reflects the value of a specific year and model vehicle in average condition, the rule (*i.e.*, 7) does allow for additions to, and deductions from, the retail value."

Given the atmosphere of an oriental bazaar which notoriously pervades the used car market, it defies reason to say that anyone, or any department of government, could establish an immutable price for such a chattel.

Defendant has raised as its first point on appeal the alleged error of the trial court in receiving evidence from auto dealers as to the value of the vehicle in question. Both sides presented such evidence, and no objection was made to the qualifications of the witnesses. Such evidence was proper and necessary and no error occurred.

■ Rule 7 by its own terms and in implementing claims practices applies only to the settlement stage between the insured and the carrier. The word "settlement" itself appears many times in the rule. A court of law is not bound by the publication(s) referred to in the rule, although it may, if it chooses to do so, receive as part of the evidence the value assigned in the publication(s). When the matter passes the settlement stage between the parties and arrives at the litigation stage, the court will use the familiar rules of law in assessing damages.

Defendant's next contention is that plaintiff's valuation witnesses used an improper standard in arriving at their opinions. Defendant claims that "actual cash value" which is required by Rule 7 is different from "replacement value" which is the standard used by plaintiff's witnesses.

Defendant arrives at this conclusion by pointing to subparagraph (1) of the rule which provides for a replacement vehicle or a cash settlement instead of a replacement vehicle, and then reasons that since no replacement vehicle was involved in this transaction, it was error to base valuations on replacement rather than actual cash value as called for in paragraph A of the rule.

Defendant further claims that there is a substantial difference between actual cash value and replacement value, in that the latter is arrived at after a dealer has accomplished normal reconditioning and repair and added a profit margin. Defendant apparently equated "actual cash value" with tradein value and "replacement value" with retail price. Suffice it to say there is no evidence, expert or otherwise, in the record of such a distinction, and we believe that the authorities are to the contrary.

Black's Law Dictionary (5th ed. 1979), at page 1391, defines actual cash value as:

> "In insurance, its customary meaning is replacement cost new less normal depreciation, though it may be determined by current market value of similar property or by the cost to replace or repair the property."

The supreme court has held that "actual cash value" and "fair cash value" are practically synonymous. *Birmingham Fire Insurance Co. v. Pulver* (1888), 126 Ill. 329, 18 N.E. 804.

■■ Moreover, a fair reading of the testimony shows that plaintiff's witnesses based their testimony on a variety of factors, not replacement cost alone. All of the witnesses, including defendant's own, arrived at the cost of a specific, comparable and available vehicle, such cost being what a willing buyer would have paid and a willing seller would have taken. This is the proper measure of damages. As was said in *McCracken v. Farmers' Grain Co.* (1919), 215 Ill. App. 551, 554:

> "The measure of damages was the fair cash market value of the goods, what they would have brought on the market, not at wholesale or for resale, or at forced sale, but on the market where such goods are bought and sold."

Defendant next contends that the trial court erred in directing it to take the salvage. In a supplement to its memorandum opinion the trial court found that defendant had elected to take the salvage, and the plaintiff had relied on this to his financial detriment. For reasons which are not apparent, the salvage had shrunk from $300-$350 immediately following the loss to $25-$75 at the time of this appeal. Defendant claims that its offer to take the salvage was conditioned upon plaintiff's taking its offer of settlement. By letter of February 10, 1975, following the loss on January 15, 1975, defendant stated to plaintiff, "Please be advised that in accord with the terms of the policy, this company is exercising its option

to take the automobile which has a value of $1,800 and pay you $1,775." No such condition appears in this letter nor elsewhere in the record. Defendant's answer to plaintiff's complaint reiterates the statement in the letter, and throughout the litigation defendant's position did not change. The trial court's decision was not contrary to the manifest weight of the evidence.

We turn next to plaintiff's cross-appeal from the trial court's finding that the conduct of the defendant was not vexatious and therefore no interest or attorney's fees could be allowed. Plaintiff places strong reliance on our decision in *Deverman v. Country Mutual Insurance Co.* (1977), 56 Ill. App. 3d 122, 371 N.E.2d 1147. We believe that *Deverman* is distinguishable.

In *Deverman* the company assumed a haggling attitude and cited the successor to Rule 7 only when the cause came to trial as justification for that attitude. In the instant case, the company relied on its interpretation of Rule 7 as a basis for its undeviating posture. Even though we have held that the interpretation was erroneous, reliance on the rule yields at least a semblance of proper conduct as opposed to the take-it-or-leave-it-maybe-we-will-come-up-one-iota-more position demonstrated in *Deverman.*

At trial in this cause defendant presented as a witness one of its senior claims attorneys who testified to an audit made of defendant by the Department of Insurance. He referred to a report which was never produced into evidence in which the department criticized defendant for making settlements over and in excess of the value set forth in the Red Book.

Under any circumstances the report is hearsay and without an opportunity to examine it we cannot say on what basis the criticism was leveled. It might well be that the failure to document the excess settlements as called for in Rule 7 was the basis, not the settlement itself.

In any event, defendant has made a *prima facie*, albeit a very lame, showing of reliance upon a regulation as reason for its position, and such reliance takes this cause from under the doctrine of *Deverman.* By so holding, we are not inviting a pullulation of such reliances in the future on other regulations. We are holding only that under the facts of this case the trial court's finding was not against the manifest weight of the evidence nor an abuse of its discretion.

Plaintiff likewise asks for attorney's fees for this appeal, and claims that he should not be required to finance a "test case" for defendant. Prior authorities have allowed such a request. (*Manchester Insurance & Indemnity Co. v. Strom* (1970), 122 Ill. App. 2d 183, 258 N.E.2d 150; *Goble v. Central Security Mutual Insurance Co.* (1970), 125 Ill. App. 2d 298, 260 N.E.2d 860.) However, each of those requests were made either under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par.

41) or section 155 of the Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 767), and the courts characterized the appeals as needless extensions of the litigation.

■■ ■ In the case at bar, the request comes via plaintiff's brief, and therefore we do not believe that the matter is properly before us. Furthermore, as we have already stated, there were debatable issues in this cause since the direct effect of Rule 7 was not addressed in *Deverman.* There was no needless extension of litigation. Upon the filing of a lawsuit one assumes the risk of appeal as a part of our legal system. No doubt the Molitor and Suvada families were equally nonplussed at finding themselves in the supreme court.

The decision of the circuit court of Clark County was correct and it is affirmed.

Affirmed.

GREEN and CRAVEN, JJ., concur.