HARTLEY D. TUCKER *et al.*, Plaintiffs-Appellees, *v.* CLARENCE BUNGER, Commissioner of Highways, Defendant-Appellant.

Third District   No. 82—1

Opinion filed July 30, 1982.

Richard D. McCoy, of Groen, Groen & Carmichael, of Pekin, for appellant.

Gery R. Gasick, of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

The commissioner of highways of Timber Township in Peoria County, Clarence Bunger, planned to widen the Martin-Webber Road to a width, including the paved surface and ditches, of 66 feet. Six township residents who own land adjoining the Martin-Webber Road objected to the commissioner's proposed actions and filed a suit in the circuit court to enjoin the commissioner from widening the road ab-

sent statutory condemnation proceedings. Following a hearing on the complaint, the Peoria County court determined that condemnation proceedings would be required before the township could widen the road beyond its existing use, and accordingly the commissioner was ordered not to proceed. An appeal of that order has been perfected by the commissioner.

All parties concede that the road in question, as it is currently used and defined by existing fences that parallel the road, is narrower than the proposed width of 66 feet. The commissioner, however, relying on the rules that govern the statutory dedication of roadways to the public use, urges that the Martin-Webber Road was originally dedicated to include 66 feet of right-of-way, that such dedication was in compliance with the statute, and that non-use of the full 66 foot width during the intervening years does not negate the township's right hereto.

To understand the township position, it is necessary to review a bit of Illinois history. Prior to 1849, counties in the State were governed by a commissioner's court, the legislature having not previously authorized the township form of local government. Among the powers vested in the county commissioners was the power to open new roads. (Ill. Rev. Stat. 1845, ch. XCIII, sec. 17.) Such roads were required to be surveyed, and plats of those surveys were to be recorded with the county recorder. (Ill. Rev. Stat. 1845, ch. XCIII, sec. 33.) Then, by action of the legislature on February 12, 1849, which took effect April 16, 1849, voters of each county in the State were given the authority to elect the township form of organization by referendum in their respective counties. In counties so electing, three commissioners of highways were to be elected in each township at the annual township meeting. (1849 Ill. Laws 190, 192.) In addition, the three commissioners of highways were given authority to lay out new roads (1849 Ill. Laws 190, 212), provided that the road was surveyed and a copy of the survey was recorded in the office of the town clerk. No requirement existed for the township highway commissioners, as it did for county commissioners, to record the plat of survey of all new roads to be recorded with the county recorder. Ill. Rev. Stat. 1874, ch. 109, par. 9.

According to the appellant township, the Martin-Webber Road was dedicated according to statutory criteria in 1851. At that time, the law provided that:

"Whenever the commissioners of highways shall lay out * * * any road, either upon application to them or otherwise, they shall cause a survey to be made of such road, and shall incorpo-

rate such survey in an order to be signed by them, and to be filed and recorded in the office of the town clerk, who shall note the time of recording the same." (1849 Ill. Laws 190, 218.) It was further provided that:

"All public roads to be laid out by the commissioners of highways of any town shall not be less than four rods [66 feet] wide * * *." (1849 Ill. Laws 190, 221.)

Finally, the town clerk was vested with the responsibility of keeping "custody of all the record books, and papers of the town * * *." (1849 Ill. Laws 190, 195.) At the trial of this cause, it was determined that the town clerk of Timber Township had in his possession no record of an order of the commissioners of highways or of a survey of the Martin-Webber Road. Such records had been either lost or destroyed.

The current commissioner of highways, the defendant herein, sought to rely on certain secondary records which were maintained by the superintendent of highways of Peoria County. From the testimony of Florence Wray, a former but long-time employee of the superintendent's office, it was learned that starting around 1931 or 1932 and continuing into the 1940's, she transcribed into typewritten form the existing records for each township in Peoria. Those records, subsequently maintained in the superintendent's office, contained a typed transcription that purports to be the commissioner's order of January 29, 1851, establishing the Martin-Webber Road and reciting a metes and bounds description of the road's path. A sketch of the road also appears on the transcription, but it was not drawn by Mrs. Wray. Another employee of the superintendent's office, Mr. Wayne Sayer, testified that the sketch "looked like" one he had drawn, in 1948 or 1949, without benefit of the original township records.

In concluding the statement of its position, the township contends that a highway right-of-way 66 feet in width was dedicated in compliance with the applicable statutes, and therefore, even though the full 66 foot width has not previously been utilized, the public's right thereto is not barred. The township relies on the case of *Department of Transportation v. Thomas* (1978), 59 Ill. App. 3d 684, 375 N.E.2d 834.

The township residents who instituted this action urge that to sustain the township's position would defeat the purposes of our recording laws. They correctly note that current recording laws require recording with the county recorder of all surveys that describe dedications of land to the public use. Under these facts, where the survey was not recorded with the county recorder, they contend that there was no proper record notice of the dedicated width of the Mar-

tin-Webber Road. The property owners conclude the statement of their position by arguing that absent proper recording, the dedication in question must be a common-law dedication where the extent of the dedicated right-of-way is determined by actual use. They rely on the authority of *Pilgrim v. Chamberlain* (1968), 91 Ill. App. 2d 233, 234 N.E.2d 75.

Our analysis of issues raised by this appeal required a review of the statutes in effect in Illinois in 1851. And that review compels us to agree with the township that in that year, the only recording requirement in effect to perfect the dedication of a township road was satisfied with a filing of the survey with the town clerk. Thereupon, it was the duty of the town clerk to maintain the survey as part of the records of the township so as to afford persons an opportunity for ascertaining the status of title to dedicated property. We cannot agree with the township that this opportunity was afforded under the particular circumstances before us.

■■ Sometime between the early 1930's and the present, the township records were lost, misplaced or destroyed. There is no testimony in the transcript of the proceedings below to indicate the whereabouts of these lost records, but the present town clerk indicates that he has never seen the original 1851 records pertaining to the Martin-Webber Road. Yet, as a general rule, the loss or destruction of a public land record does not render ineffectual its force and operation as constructive notice. (*Shannon v. Hall* (1874), 72 Ill. 354.) The purpose of the recording laws is to protect the property rights of the grantee, in this case the township, and such rights are not extinguished or lost by the destruction of the record book. (*Shannon v. Hall.*) Though the case of the unwary purchaser who is deemed to have constructive notice of missing records "has much equity in it," that equity cannot be held superior to that of the grantee who duly recorded his interest in real property and relied on the protection of the recording laws. *Shannon v. Hall.*

To this general rule, however, there appears at least one exception. That is, the property rights of a grantee whose recorded instrument of title is lost or destroyed may be defeated where the loss or destruction is attributable to that grantee. (52 Am. Jur. 2d *Lost and Destroyed Instruments* sec. 5 (1970).) The facts of the instant case would appear to fit this exception to the general rule. Here, the grantee of the dedicated lands, Timber Township, was charged with the legal responsibility for maintaining the public record of the dedication. The township inexplicably failed in that responsibility, and further failed to maintain in its files any secondary or reconstructed re-

cord so as to provide constructive notice to the unwary.

While the equities may favor the property rights of one who relies on the recording laws, only to have such records lost or destroyed by events beyond his control, a different balance of equities results when such lost or destroyed records are within the custody or control of the party seeking to rely on their legal effect. Where, as here, the township was able to reconstruct the township records from secondary sources for the benefit of this litigation, it imposes no undue burden to require the township to maintain the same reconstructed records in the proper repository, the office of the town clerk, for the benefit of title examiners. The failure to maintain such records in the instant case was undoubtedly a good faith error, but a rule requiring such records to be maintained will insure that in future cases townships and other public record repositories will not seek to benefit from an intentional neglect of duty.

Accordingly, we hold that the township may not rely on the reconstructed records proffered in the circuit court, and thus its assertion that a statutory dedication was completed must fail. Having concluded as did the court below that the dedication in question is governed by the common law, we affirm the trial court's order requiring condemnation proceedings before the Martin-Webber Road is expanded beyond the width of its existing use. Finally, we determine that the appellee's request for attorney's fees pursuant to section 9.8 of the Eminent Domain Act (Ill. Rev. Stat. 1979, ch. 47, par. 9.8), is not properly before us, said request having not been presented to or considered by the trial court. *Crandall v. Country Mutual Insurance Co.* (1980), 81 Ill. App. 3d 140, 400 N.E.2d 1100.

Affirmed.

BARRY, P. J., and HEIPLE, J., concur.