ROBERT L. KIRNBAUER, Plaintiff-Appellant, v. THE COOK COUNTY FOREST PRESERVE DISTRICT, Defendant-Appellee.

First District (1st Division)   No. 1—90—0366

Opinion filed June 17, 1991.

Hoey & Farina, of Chicago (James L. Farina, of counsel), for appellant.

Burke & Smith, Chartered, of Chicago (Ellen B. Van Vechten, of counsel), for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Plaintiff-appellant, Robert L. Kirnbauer, brought this action for personal injuries which he sustained wherein he lost an eye when it was punctured by part of an extended steel cable barricade erected by defendant-appellee, the Cook County Forest Preserve District. The trial court granted defendant's motion for summary judgment as to count II of plaintiff's third-amended complaint, sounding in negligence. Following a trial on count I, sounding in willful and wanton conduct, a directed verdict was granted and judgment entered for defendant. Plaintiff does not challenge the court's ruling with respect to the directed verdict on the willful and wanton count; rather, he filed this appeal as to the court's ruling concerning the negligence count only. On appeal, plaintiff asserts that the trial court erred in granting the motion for summary judgment because there exists a genuine issue of material fact as to whether the area immediately around the barricade, purportedly on the public right-of-way, was part of "a park, playground or open area for recreational purposes," pursuant to section 3—106 of the Local

Governmental and Governmental Employees Tort Immunity Act (hereinafter Tort Immunity Act) (Ill. Rev. Stat. 1987, ch. 85, par. 3—106). We affirm the judgment of the trial court for the following reasons.

BACKGROUND

On June 5, 1979, plaintiff, then 13 years old, was waiting for a school bus on the north side of 135th Street near Natchez Avenue in Orland Park, Illinois. On the north side of 135th Street was a forest preserve owned by the defendant, commonly known as Tampier Slough. At that time, a steel cable barricade constructed and erected by defendant was suspended between two posts about three feet above the ground. A sign marked "closed" was attached to the cable by wire, cold chucks or nails. Plaintiff and his companion, Mark Williams, used the sign to twist the cable. Mark pushed the sign over the cable toward plaintiff, who then pushed it under the cable to Mark. The boys rotated the cable seven or eight times and then stepped back to watch the cable spin. Mark stated that they stepped back in case anything came off and that he knew the cable could cause injury if it hit him while spinning. The boys then began to twist the cable a second time, twisting it one or two rotations more than the first time when the sign broke while it was in plaintiff's hand and he was struck in the eye by the cable.

Plaintiff's third-amended complaint alleged in count I that defendant had willfully and wantonly erected the cable off its own property onto the public right-of-way for 135th Street knowing that the area was used as a bus stop for children. Count II alleged that defendant negligently and carelessly erected the cable with a sign affixed to it by the use of nails, creating an unsafe condition for pedestrians, especially children playing in and near the park. Plaintiff had filed prior complaints alleging negligence or willful and wanton conduct by defendant; however, for the first time, in his third-amended complaint, plaintiff alleged that the property in question was not public property owned by defendant.

Defendant filed an answer, affirmative defenses and motions for summary judgment and sanctions directed at the third-amended complaint. Defendant initially asked the trial court to dismiss count II based on the court's earlier ruling of June 21, 1989, wherein it granted summary judgment in favor of defendant based on section 3—106 of the Tort Immunity Act. However, because the trial court allowed plaintiff to amend his complaint on July 27, 1989, and plaintiff then added a new theory, *i.e.,* the accident site was not the

property of defendant, but part of the right-of-way for 135th Street, defendant proceeded with several arguments in support of its summary judgment motion. Defendant first reasserted that the accident site was public property within the meaning of the Tort Immunity Act and that since it was used for recreational purposes, the preserve was immune from liability for ordinary negligence. Defendant next maintained that for purposes of the summary judgment motion, assuming the accident site was a part of the right-of-way for 135th Street, it was no more than an easement, which the owner of the servient estate, *i.e.*, defendant, was allowed to use in any way which did not interfere with the easement. Defendant further contended that since the barricade was also part of either a road or a trail, it was immune from tort liability "for an injury caused by a condition" thereon pursuant to section 3—107. (Ill. Rev. Stat. 1987, ch. 85, par. 3—107.) In any event, defendant asserted that the existence of an unused easement at the site of the accident did not change defendant's duty to plaintiff.

When the trial court considered the issues raised on summary judgment, the court had before it certain affidavits, several exhibits which included photographs, certified copies of a warranty deed and a right-of-way property record, and the depositions of: plaintiff; his father; Mark Williams, the companion who was with plaintiff at the time of the accident; Mr. Strache, the defendant's superintendent; and expert witnesses who testified on behalf of both parties. Defendant's argument was that pursuant to section 3—106 of the Tort Immunity Act, the preserve was immune from tort liability, absent willful and wanton conduct, for injuries sustained on its property used for recreational purposes.

OPINION

■ A reviewing court is not limited to the precise reasons stated or those implied by the trial court in entering its summary judgment in determining whether judgment was correctly entered for the moving party as a matter of law. (*Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 414 N.E.2d 865.) Rather, the reviewing court will consider all grounds urged and facts revealed in the trial court when determining the propriety of entry of the summary judgment. *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778.

■ In reviewing the trial court's grant of summary judgment, the appellate court must consider all grounds urged and facts revealed in the pleadings in the case, together with all depositions

and admissions on file, and affidavits, if any, to determine if a genuine issue of material fact was raised to be determined by a jury and if none was raised, whether the movant was entitled to summary judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005; *Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 411 N.E.2d 229; *Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 59, 545 N.E.2d 184.) The appellate court will affirm the summary judgment of a lower court if the decision is justified by a reason appearing in the record. *Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 407 N.E.2d 1031.

Our review of the record here establishes that no material facts were in dispute, as shown by the legal documents and other evidence before the court, and that the question of interpretation of the Tort Immunity Act is a question of law properly decided on a motion for summary judgment. Pursuant to article XIII of the Illinois Constitution, the General Assembly is the ultimate authority in determining whether a unit of local government is immune from tort liability (Ill. Const. 1970, art. XIII, §4); accordingly, we must look to the language of the Tort Immunity Act. Pursuant to the Tort Immunity Act, local public entities and public employees are immune from liability arising from the operation of specific governmental functions in tort actions. (Ill. Rev. Stat. 1987, ch. 85, par. 2—101; *Firestone v. Fritz* (1983), 119 Ill. App. 3d 685, 689, 456 N.E.2d 904, 908.) Because the Tort Immunity Act is in derogation of the common law, it must be strictly construed against the local public entity or public employee. *Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 342, 270 N.E.2d 415, 417.

■ Defendant's motion for summary judgment was based in part upon section 3—106 of the Tort Immunity Act, which provides in relevant part as follows:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the *existence of a condition of any public property* intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities ***." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 85, par. 3—106.)

Section 3—106 applies to situations where a municipality fails to maintain property under its control intended for recreational use by allowing an unsafe condition to exist. Section 3—106, unlike section 3—102, contemplates liability only if the governmental unit or employee acts in a willful and wanton manner. Pursuant to section 3—

106, there is no municipal liability for negligence resulting in injuries occurring on public property intended for recreational purposes, unless the local public entity is guilty of willful and wanton conduct. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501. Accord *Jarvis v. Herrin City Park District* (1972), 6 Ill. App. 3d 516, 285 N.E.2d 564 (holding that a forest preserve will be liable for injuries only in the case of willful and wanton negligence that proximately causes such injuries).

Plaintiff first argues that defendant has no basis for immunity because the property where the injury occurred is located on the right-of-way for 135th Street, and even assuming such property can be considered an easement, easements are categorically excluded from the definition of public property pursuant to the Tort Immunity Act. Defendant counters that it is immune from liability for negligence because the steel cable barricade was located on public property which was intended for recreational purposes. Defendant also maintains that the accident site was not subject to an easement for highway purposes; but, even assuming such site was subject to an easement, the easement was unused and in the possession of defendant, and therefore public property within the meaning of section 3—101. Section 3—101 in defining public property states that "property of a local public entity" and "public property" "mean real or personal property owned or leased by a local public entity, but do not include easements, encroachments and other property that are located on its property but that it does not own, possess or lease." Ill. Rev. Stat. 1987, ch. 85, par. 3—101.

In the present case, the warranty deed of record clearly establishes that defendant owns realty known as the Tampier Slough Forest Preserve and the southern boundary as the southern section of line 31, which lies in the center of 135th Street, an east-west street in Orland Park, Illinois. The travelled portion of 135th Street at the location of the accident consists of an asphalt road and a gravel shoulder. Defendant's expert witness determined that the barricade had been located 12 feet north of the north edge of the gravel shoulder and 30 to 31 feet north of the property line. At the time of the injury, plaintiff, according to his statements and those of Mark, was standing two feet north of the cable, and thus, according to defendant's calculations, 32 to 33 feet north of the southern boundary.

The entire property owned by defendant, as far south as the section line in the center of 135th Street, was dedicated for "the purpose of education, pleasure, and recreation of the public" by or-

dinance approved March 13, 1952. Mr. Strache, defendant's superintendent, stated that defendant regarded the boundary to be the edge of the travelled roadway of 135th Street and that it maintained the area up to the road by cutting the grass and picking up litter from the ground.

Moreover, the evidence establishes that the area within the boundaries was used for recreational purposes. At the scene of the accident, where the trees and bushes parallel 135th Street, there is an opening where a trail or path runs north to the lake. The trail which is perpendicular to 135th Street is used by pedestrians to gain access to the forest preserve and had been used by plaintiff to gain access to the lake to fish. His father and Mark also stated during their respective depositions that they used the trail blocked by the cable to walk to the lake for fishing. The trail also was used for horseback riding and vehicular access for defendant's employees for park maintenance. In the spring of 1979, defendant had problems with people driving their cars into the preserve at the site of the accident and thus erected the cable barricade to block vehicular access to such unauthorized vehicles.

Plaintiff does not dispute that the center of the road is the boundary line or the use of the forest preserve property as a recreational area, but maintains that the barricade itself was off the forest preserve property and on the public right-of-way for 135th Street. He further asserts that a genuine question of fact exists as to whether defendant's purported use of a portion of the right-of-way as an open area for recreational purposes is consistent with the public's right to use the same area as a highway. In support of his proposition, plaintiff presented to the trial court a right-of-way property record which states that the road was dedicated as long ago as 1851, that there is no record of such dedication, that the width of the road is not specified and that the dedications at that time were made for a width of four rods. A rod is the equivalent of 16½ feet. (Black's Law Dictionary 1493 (4th ed. 1951).) According to plaintiff's calculations, then, the width of the entire road would be 66 feet and defendant's property boundary would begin 33 feet north from the center line. As the survey placed the barricade 30 to 31 feet north of the section line, plaintiff maintains that the barricade would have been built upon the right-of-way. Defendant counters that an easement was created only for the 19 to 20 feet north of the southern boundary of the forest preserve which were in use as a road, and because plaintiff was standing 32 feet north of the edge of the road, he was on defendant's property.

■ It is well settled in Illinois that a highway can be established by: (1) statute; (2) dedication; or (3) prescription, defined as adverse use by the public for a 15-year statutory period. (*People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 997, 373 N.E.2d 471.) The dedication of a road can be either a statutory dedication which is created by the recording of a plat or a common law dedication evidenced by acts of the grantor. (*Terwelp v. Sass* (1982), 111 Ill. App. 3d 133, 135-36, 443 N.E.2d 804.) A statutory dedication occurs only upon strict compliance with the statutory requirements. (*Reiman v. Kale* (1980), 83 Ill. App. 3d 773, 776, 403 N.E.2d 1275.) Here, the only relevant record relating to the origination of 135th Street, as mentioned above, is the right-of-way record dated March 1, 1851. Accordingly, here, absent proof of a statutory dedication of 135th Street as a highway, coupled with the use of the street as a public road since at least 1851, we believe that a public road exists by common law dedication or prescriptive use. It is established that a statutory dedication of a highway conveys a fee simple to the public entity while a common law dedication grants the public an easement for highway purposes. (*Terwelp*, 111 Ill. App. 3d at 136; *Department of Transportation v. Thomas* (1978), 59 Ill. App. 3d 684, 688, 375 N.E.2d 834.) Here, the record established that defendant maintained the area up to the gravel road. In *Pilgrim v. Chamberlain* (1968), 91 Ill. App. 2d 233, 234 N.E.2d 75, the highway commissioner sought to widen a road authorized and laid out in 1858 to a width of 66 feet even though the plat filed at that time failed to contain a description of the width of the road. The court held that the width of the road would be determined by the fence line established by the abutting owners, that on the record it would be difficult to sustain a statutory dedication, and that there was no record of acceptance by the grantee of 66 feet of right-of-way. (*Pilgrim*, 91 Ill. App. 2d at 239-40.) In *Tucker v. Bunger* (1982), 108 Ill. App. 3d 227, 439 N.E.2d 488, defendant highway commissioner also sought to widen a road to the width of 66 feet on the grounds that it was originally dedicated to include 66 feet of right-of-way. Like here, in *Tucker*, there was no record of the recording of the plat, but defendant there sought to establish the width of the road through use of a transcription of an 1851 order that described the road in metes and bounds. In rejecting this evidence and finding for the abutting landowners, the court held that the dedication of the road was governed by the common law and prohibited expansion beyond its existing width. *Tucker*, 108 Ill. App. 3d at 231.

■ Similarly, the owner of the land here, defendant, exercised dominion and control over the land up to the gravel road. Without addressing the issue of standing on the part of plaintiff to raise the question of expanding the width of the road, under *Pilgrim* and *Tucker*, we find that the road could not be expanded beyond its boundaries, and thus, the accident site was not subject to an easement; rather, it was located on defendant's property.

■ However, assuming, *arguendo*, that the accident occurred on property that could be considered easement property, we believe that the evidence shows that defendant possessed this land, built personal property on the unused portion of the easement, *i.e.*, the steel cable barricade, and continued to "possess" and use the area. A tract of land benefitted by an easement is the dominant tenement and the burdened land is the servient tenement. (*Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 414 N.E.2d 865.) The erection of a right-of-way will not terminate the easement where the obstruction is not of a material or permanent character. (*Martin v. Murphy* (1906), 221 Ill. 632, 77 N.E. 1126.) Thus, the owner of the servient estate, defendant here, may make any use of this land as long as it does not interfere with the easement of the owner of the dominant estate. *Kurz v. Blume* (1950), 407 Ill. 383, 389.

Contrary to defendant's argument, the record shows that the east-west traffic on 135th Street could not have driven 33 feet north of the gravel shoulder without driving through trees and shrubs. The township did not permit users to travel north of the shoulder. Thus, defendant retained all right to use the land which was not inconsistent with the easement, including constructing a barricade to prevent traffic from turning off the highway or easement and driving into the preserve. Since the accident site was unused for highway purposes, defendant could and did retain possession of the site.

Moreover, the statutory definition of public property excludes "easements, encroachments *and* other property that are located on its property, *but that it does not own, possess or lease.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 85, par. 3—101.) The inclusion of the terms "possess" or "lease" suggests that the legislature intended to include within the definition of public property that property which is owned by the public and in its possession even if subject to an easement. We believe that plaintiff is misreading the statute in its argument that easements are not property. The definition of property in section 3—101 includes both real and personal

property. We also agree with defendant's argument that the phrase "other property" could be construed to refer to personal property located on real property or to interests in real property which include easements. We believe that the intent of the legislature here is to include all real or personal property owned, possessed or leased by the public entity and to exclude any encroachment, easement or property of others which is located on its property but which it does not possess or lease.

Accordingly, we find that based upon the plain language of section 3—101 of the Tort Immunity Act, the distinction whether the accident site was located on real property owned by defendant or personal property that was owned by defendant and placed upon the public right-of-way that was an easement upon defendant's land is meaningless.

██ We likewise reject plaintiff's argument that the accident site was not intended for recreational purposes within the meaning of section 3—106. While the record establishes that the area immediately around the barricade was used primarily by defendant as a block to public vehicular access, it also shows that the area was used as a footpath for plaintiff, his friends, family, and others to gain access to the lake for fishing, as access to the horse trail and as part of the area that defendant maintained for the public's recreational purposes. The purpose of the Act is to encourage the development and maintenance of parks, playgrounds and similar areas. (*Beckus v. Chicago Board of Education* (1979), 78 Ill. App. 3d 558, 560, 397 N.E.2d 175.) In *Annen v. Village of McNabb* (1990), 192 Ill. App. 3d 711, 548 N.E.2d 1383, this court found that the purpose of section 3—106 manifests an intent to include restroom facilities within a park as part of the park itself. The court stated:

> "A restroom facility located within a park is a part of the park. While a restroom building itself is not intended to be used for recreational purposes, it allows a park user to continue using the park without having to leave the park to use restroom facilities. This increases the usefulness of the park and advances the legislative purpose." *Annen*, 192 Ill. App. 3d at 713.

Accordingly, we find that the meaning of public property within section 3—106 encompasses the definition of public property intended for recreational use here since the erection of the steel barricade was to protect the public safety by barring unauthorized vehicles from a recreational area and to allow maintenance of the area in furtherance of recreational purposes. Because the injury

could have taken place in an area not specifically used for recreational purposes, *i.e.*, the grassy area, or horseback trail or lake, defendant cannot be stripped of its immunity. Under *Annen*, one can conclude that the Act applies to an area not specifically intended for recreational purposes if such area "increases the usefulness of the preserve" and furthers the purpose of the statute.

Similarly, in *Newby v. Lake Zurich Community Unit, District 95* (1985), 136 Ill. App. 3d 92, 482 N.E.2d 1061, a student sustained injuries as a result of climbing a tree to gain entry to defendant's field house. Defendant was granted immunity pursuant to section 3—106 even though plaintiff argued that neither the tree nor the fieldhouse was intended or permitted to be used for recreational purposes. See also *Spencer v. City of Chicago* (1989), 192 Ill. App. 3d 150, 548 N.E.2d 60 (where this court found that section 3—106 barred plaintiff's action related to the drowning of a child in a lagoon where fishing and swimming were prohibited and which was not intended for recreational purposes).

In *Ramos v. Waukegan Community Unit School District No. 60* (1989), 188 Ill. App. 3d 1031, 544 N.E.2d 1302, this court in finding that section 3—106 of the Immunity Act applied to an area subject to an easement, *i.e.*, a public sidewalk and distinguishing *Larson v. City of Chicago* (1986), 142 Ill. App. 3d 81, 491 N.E.2d 165, also held that "the reviewing court's suggestion in *Larson* that the public property must be specifically intended for recreational purposes is questionable in light of the express language in section 3—106 which immunizes a public entity for injuries which occur because of the existence of a condition on any public property intended or permitted to be used for a recreational purpose." *Ramos*, 188 Ill. App. 3d at 1037.

Defendant also argues that the lower court's ruling can be sustained on the basis of section 3—107 because the injury was allegedly caused by the condition of a hiking or fishing trail. We agree. Section 3—107 states:

"Neither a local public entity nor a public employee is liable for an injury caused by a condition of: (a) Any road which provides access to fishing, hunting, or primitive camping, recreational, or scenic areas and which is not a (1) city, town or village street, (2) county, state or federal highway or (3) a township or other road district highway. (b) Any hiking, riding, fishing or hunting trail." (Ill. Rev. Stat. 1987, ch. 85, par. 3—107.)

Plaintiff's engineer stated that the barricade crossed a dirt road and could be considered a condition of the road. Defendant contended that the barricade crossed a trail and its engineer testified that the area was not a road, but a trail. In any event the Act applies to both trails and roads, and the record shows that the area is either a trail or a road.

Furthermore, even if we concluded that the immunity statutes were not available, we would find that defendant was entitled to judgment as a matter of law on the ground that plaintiff failed to establish the defendant owed him a duty. (*Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 60, 545 N.E.2d 184.) In Illinois, a landowner does not owe a duty of care to a child injured in its premises unless: (1) the landowner knows children frequent the premises and (2) the cause of the injury was a dangerous condition on the premises. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286, 464 N.E.2d 1023.) This rule has also been applied with respect to injuries occurring on recreational property maintained by a public entity. (See *Durham v. Forest Preserve District* (1986), 152 Ill. App. 3d 472, 504 N.E.2d 884 (where the court held that defendant owed no duty to a 16-year-old who drowned in the retention pond).) Moreover, an object which is not inherently dangerous does not become a dangerous condition merely because it is capable of being abused or wrongfully used. *Hootman v. Dixon* (1984), 129 Ill. App. 3d 645, 649, 427 N.E.2d 1224.

Lastly, we conclude that the trial court did not abuse its discretion in hearing a motion for summary judgment with respect to plaintiff's complaint that set forth a new theory of liability predicated upon facts contrary to those of record for 10 years. We find no abuse of discretion by the court in allowing a motion for summary judgment which attacked a complaint that sought to circumvent a prior ruling of the court granting summary judgment with respect to the same negligence claim that contradicted factual admissions which were of record for 10 years.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.