THE MINNIE CREEK DRAINAGE DISTRICT, Appellee, *vs.* CLARA STREETER, Appellant.

*Opinion filed October 22, 1927.*

1. DRAINAGE—*what lands may be included in drainage district under section 58 of Levee act.* Where the weight of the evidence shows that the owner of certain lands lying outside a drainage district has made connection with the main ditch or drains of the district by tile drains, such lands may, by petition under section 58 of the Levee act, be brought within the district notwithstanding they constitute a dominant estate with respect to the district and that the natural flow of water is from said lands through the ditches of the district.

2. SAME—*lands connected with a drainage district under section 58 of Levee act are presumed benefited.* To warrant the court in ordering outlying lands to be included in a drainage district under section 58 of the Levee act it is sufficient to allege and prove either that the lands are connected by artificial drains or that they will be benefited by the work of the district, and where such lands are connected by tile drains with the ditches of the district the owner so connecting his lands is estopped to deny that they are benefited.

3. SAME—*lands may be connected with drainage district across public highway.* As the public has but an easement in a public highway and the fee remains in the owner, who may exercise every

right of ownership not inconsistent with the easement of the public, highway authorities cannot prevent the connection of outlying lands with a drainage district by the laying of tile drains under a highway provided the connection is made in a manner that will not injure or destroy the public easement; and it is no defense to a petition under section 58 of the Levee act to include such lands with the drainage district, that the road commissioners might at some time sever or destroy the connection.

APPEAL from the County Court of Kankakee county; the Hon. HENRY F. RUEL, Judge, presiding.

WALTER C. SCHNEIDER, for appellant.

W. R. HUNTER, and EVA L. MINOR, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The Minnie Creek Drainage District was organized in Kankakee county in 1893 under the Levee act. The main ditch of the district runs from west to east along the center line of sections 28, 27, 26 and 25, township 30 north, range 14 west of the second principal meridian, in Kankakee county, thence northeast toward the northeast corner of section 25, crossing the Illinois Central railroad, which runs in a northeasterly and southwesterly direction, and thence in an easterly direction to the Iroquois river. The lands involved in this appeal are that part of the west half of the northeast quarter of section 36 which lies west of the Illinois Central right of way and the northeast quarter of the northwest quarter of section 36, which is immediately south of section 25, and the southern boundary of the drainage district is the center line of the public road between sections 25 and 36, which is also the section line between those two sections. These lands, and all of section 25, were formerly owned by George W. Schrader. On his death appellant, Clara Streeter, succeeded to the title to the lands here involved. Other persons now own section 25. The drainage district filed a petition in the county

court of Kankakee county alleging the further facts that tile drains have been constructed in the northeast quarter of the northwest quarter of section 36, extending north across the road between sections 36 and 25 and connecting with the tile drains in section 25 which empty into the main ditch of the drainage district; that tile drains have been constructed in that part of the west half of the northeast quarter of section 36 that lies west of the Illinois Central railroad and running in a northerly direction and connecting with the tile drains in section 25 which connect with the main ditch of the district, and that the lands of appellant will be benefited by the work done and to be done by appellee in the construction and maintenance of its drainage ditches. Appellant filed an answer to the petition, by which she denied all direct or indirect connection of her lands by drain tiles with the drains of the district, denied the construction of the particular drains alleged in the petition, and denied that she, or any former owner of the lands owned by her, has made any voluntary application to the drainage district under the provisions of section 58 of the Levee act. She alleged that her lands are dominant to the district and are adequately drained by the natural flow of the waters, and that she has not diverted or cast upon the district any more water than naturally flowed thereon. A hearing was had before the court, and after an examination of the lands by the court it was ordered that the lands of appellant described in the petition be annexed to the district. She has perfected this appeal.

The evidence of Samuel Devere, Adolph Maulbetsch and Henry F. Nordmeyer tends to show that George W. Schrader, about three or four years previous to the filing of the petition, tiled the tracts of land involved in this suit and connected such tile drains with other tile drains passing under the public road aforesaid, which latter tile drains were connected with other tile drains in section 25 which drained into the main ditch of the drainage district. These three

witnesses were commissioners of the drainage district and had been such commissioners since about the time it was organized. They lived in Otto township, which is the name of the township in which appellant's lands are situated, and were thoroughly acquainted with the character and condition of the lands both before and after they had been tiled by Schrader and drained into the main ditch of the drainage district. They were also thoroughly acquainted with the effect of tiling and draining farm lands that were too wet for agricultural purposes, and this knowledge enabled them to determine with certainty that the lands of appellant were tiled and drained into the drainage district ditch three or four years or more before the filing of the petition. The testimony shows without question that the lands of Schrader in section 25 were tiled by him about four years previous to the beginning of this proceeding and that such tile drains drained into the main ditch of the drainage district. It is also shown, beyond question, that the tiling in section 25 was connected with two lines of tile that pass under the public road between sections 25 and 36 and then extend southward to the south line of the road and at that point connect with two lines of tile running northward and northwesterly across the northeast quarter of the northwest quarter of section 36. The line of tile running northerly across said forty acres crosses the north line thereof about thirty rods east of the northwest corner of the forty. The other line of tile that runs northwesterly across that forty crosses the north line thereof about forty-eight rods east of the northwest corner of the forty. These three witnesses testified to a number of facts by which they showed that the lands of appellant were tiled as aforesaid, and that the tiling thereof connected with other tile drains which drained into the main ditch of the drainage district. On each side of the public road there were two ditches, and the tiles that passed out of section 25 and into the tiles passing southward under the public road and to the south

line thereof were exposed on both lines of the tile drains in the ditch north of the road and in the ditch south of the road. As much as two or three feet of each of these lines of tile drains were exposed on both sides of the road, and one of the witnesses testified that he was able to see through these two lines of tile from one side of the road to the other by reason of the fact that the tiles on both sides of the road which were exposed were broken or chipped out. The witnesses were enabled to trace these lines of tile in section 25 across the road and into section 36 by evidences of the ditches that were dug and into which the tiles were placed. These evidences were the sunken condition of the ditches dug for the tile, both across the lands in sections 25 and 36 and across the road. They were also enabled to trace these lines of tile by the growth on top of the ground and other effects which the tiling and draining of the land had on the appearance thereof, and the growth of grass and weeds in the immediate vicinity of the drain ditches. They were also enabled to know with certainty about the two lines of tile across the west forty of appellant's lands by the use of iron rods that were sunk into the ground in the tiling ditches. One witness testified that he thus tested the ditches for tile and struck the tile with the iron rod in several places as he went south and southeasterly from the north line of the forty along the tile ditches. On both sides of the tile ditches running into section 36 there was a strip of forty feet or more on each side of both ditches which presented a much drier appearance than the ground further away from the ditches. The witnesses followed these ditches for about twenty rods south of where they entered into appellant's lands, and from the point to which they followed the ditches, as far as they could see southwardly and southeasterly, the ground and the growth of the vegetation presented the same appearance and evidence of drained land as appeared at the point from which they were looking. These witnesses also stated that very much better

crops were raised on the lands of appellant after they were drained than before, and that before they were drained they were wet and soggy and not fit for agricultural purposes. They therefore stated that for the foregoing reasons the lands were benefited by such drainage, but no one of the witnesses stated any definite amount of the benefits.

It is argued by appellant that the testimony of appellee's witnesses only tends to show that the northeast quarter of the northwest quarter was tiled and benefited, and that that part of the west half of the northwest quarter of section 36 that lies west of the Illinois Central railroad is not shown to have been tiled or benefited by any tile drains in that section. It is proved that the tile drains which run southeasterly were followed by the witnesses for a distance of not more than twenty rods south of the north line of section 36, but the evidence shows that as far as the witnesses could see in a southeasterly direction this tile line continued in such direction, and that such tile line, if continued, would reach and cross both tracts of appellant's land that lie next to the Illinois Central right of way. The witness Devere testified that before he observed or knew about this tile being on appellant's lands they were so wet in the spring of the year they could not be worked; that he had been over both tracts of land that lie west of the Illinois Central track and that they were drier than they were before the tile was laid; that they have been cropped since the tile was laid and were cropped before it was laid, and that the effect of putting in the tile was to make those lands drier and more productive. He therefore gave it as his opinion that the market value of those lands had been increased by the tiling. There is evidence, therefore, that all the lands of appellant were tiled and benefited by such tiling.

Appellant offered in evidence a plat made by a civil engineer showing the elevation of her lands as compared with the elevation of the drainage ditch. The plat showed there was a fall of about fourteen feet from the south side of

327—16

appellant's lands to the drainage ditch north of section 36. Appellant also offered evidence to the effect that the fall of the land was from the south to the north, and that the flow of the water was naturally in that direction. There was a small open ditch on appellant's lands that had been there long before the drainage district was organized. The water from this open ditch ran in a northeasterly direction across appellant's land to the public road and thence across the road through a culvert and north to Minnie creek. The plat showed that the open ditch had a higher elevation than the drainage ditch and sloped in that direction.

Appellant's brother, Charles J. Schrader, who had been in charge of the lands of appellant since the death of George W. Schrader, testified, in substance, as follows: He knew of no tile on the lands in question and had found no evidence of any tile being there. The flow of the surface water in its natural course had always been in the direction of Minnie creek. Before the building of the drainage ditch the flood water had never gotten upon section 36. No work done in the drainage district had, in his judgment, affected the draining of the lands owned by appellant. He accounted for the increased crops on her lands by reason of the application of potash as a fertilizer. He gave it as his opinion that better drainage of these lands would be a detriment rather than a benefit, because the lands were sandy and better drainage would dry out the sand and cause it to blow. On cross-examination he stated, "I will not say that there is no tile connection extending from section 36 to section 25 in this land that my brother formerly owned." He also stated, in answer to a question asked him by the court, that if the court went on the lands and found two branches of tile connected up with tiles in section 25, and they were shown to him, his testimony as to the benefits would be the same. The court, at the request of both parties, went upon the premises and examined the same, after hearing the testimony of the witnesses.

Appellee also offered the testimony of the civil engineer of the district in regard to a conversation he had with George W. Schrader five or six years previous to this suit, to the effect that Schrader stated that he had laid tile on land south of appellant's lands. Appellee also introduced in evidence a petition signed by Schrader and directed to the commissioners of appellee in which he stated that he desired to have attached to and made a part of the drainage district the same lands in section 36 that are involved in this suit. There is no evidence in the record as to whether or not his petition was ever acted on by the drainage district. Appellant objected to the foregoing evidence, claiming that it was incompetent and not binding on appellee in any way and that it was hearsay. We do not think that it is necessary to discuss the admissibility of this evidence, as the other evidence in the record was sufficient to show, by a preponderance thereof, that the lands of appellant are, in fact, connected by drain tile with the drain tile across the public road and across section 25 and are thereby drained into the main ditch of appellee. In addition to the evidence aforesaid the court viewed the premises at the request of the parties, and was thereby enabled to see all the surface indications of the existence of tile on appellant's lands and their connection with the main ditch of the district.

Section 58 of the Levee act, as amended June 28, 1923, provides: "Any land lying outside of the drainage district as organized, the owner or owners of which shall thereafter make connection with the main ditch or drain or with any ditch or drain within the district as organized, or whose lands are or will be benefited by the work of such district, shall be deemed to have made voluntary application to be included in such drainage district; and thereupon the commissioners shall make complaint in writing, setting forth a description of such land or lands benefited, and amount of benefits; the name of the owner or owners thereof, also a description of the drain or ditch making connection with

the ditches of such district, as near as may be; and file said complaint in the county court or before a justice of the peace." (Smith's Stat. 1925, p. 1015.)

Appellant argues that since it is the law in Illinois that the servient estate must admit the free passage of the surface water from the dominant estate, there was no benefit to her lands by the connection of them with the drains of the district. If there had been no artificial connection made of her lands with the drains of the district this argument would be of weight, as the servient estate is bound to accept the natural flow of the waters from the dominant estate. But there was an artificial connection made as contemplated by section 58 above quoted, and appellee so alleged in its petition. In *People* v. *Wild Cat Drainage District*, 181 Ill. 177, it was held under a similar provision of the Farm Drainage act that the mere fact that the land owners had the right to discharge the waters from their lands upon the lands in the district below them gave them no right by artificial means to turn such waters into the ditches dug by the district without assuming the burdens imposed by the statute.

Appellant also discusses the question of benefits to her lands, and argues that as she is not benefited by any connection of her lands with the drainage district by artificial means her lands cannot be made a part of the district. Under the provisions of section 58 of the Levee act it is not necessary to allege and prove that a party's lands are both connected with the drains of the drainage district by artificial means and that the lands are benefited thereby. It is sufficient to allege and prove either that the lands are so connected, or that they will be benefited by the work of the drainage district, to warrant the court in ordering the connection of the lands made with the district. (*Gar Creek Drainage District* v. *Wagner*, 256 Ill. 338.) Under the provisions of section 58 it may be presumed that when lands are so connected with the drains of a drainage district the

same are benefited, and the owner so connecting them is estopped to deny such benefits by his act of connecting his lands. *People* v. *Wild Cat Drainage District, supra.*

The public has but an easement in a public highway. The fee remains in the owner, who may exercise every right of ownership not inconsistent with the easement of the public. (*Moore* v. *Gar Creek Drainage District,* 266 Ill. 399.) The argument of appellant that the commissioners of the public highway aforesaid may determine to remove the tile across the road and thereby sever or destroy the connection of appellant's lands with the drains of the district presents no defense in this case. The proof shows that she or her predecessor in title has made the connection with the drainage district contemplated by the statute, and we are not permitted to conjecture that her connection with the drainage district may be severed or destroyed by any act of the road commissioners, and appellee was not required to allege and prove that appellant would not be jeopardized by any act of the road commissioners. In fact, the presumption is that she is connected with the drains of the district by the permission or consent of the road commissioners and that she is not a trespasser by reason of such connection. The public road authorities could not prevent appellant from establishing such a connection with the drain tiles under the public road-bed if made in a manner that will not injure or destroy the public's easement. There is no indication in this record that an unauthorized connection has been made with the tile drains of the district.

The allegations in the petition and the proof thereunder are such as to warrant the order and judgment of the court in this case, and such order and judgment are affirmed.

*Judgment affirmed.*