(No. 29177.—

COMMISSIONERS OF PIGEON CREEK DRAINAGE DISTRICT, Appellees, *vs.* CHARLES FRANK *et al.*, Appellants.

*Opinion filed January 23, 1946—Rehearing denied March 14, 1946.*

PALLISSARD & FLEMING, of Watseka, for appellants.

ROBERT F. GOODYEAR, of Watseka, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

The appellees, as commissioners of the Pigeon Creek Drainage District, filed their petition in the county court of Iroquois county seeking to annex certain lands to said district. The district was organized in the year 1940 as a levee district and the petition was filed under section 58 of the Levee Act. (Ill. Rev. Stat. 1943, chap. 42, par. 56.) Petitioners alleged as grounds for such annexation that the lands sought to be annexed were within the watershed of said district's ditches and would be benefited by the work of such district.

The appellants were all landowners who appeared, filed objections and insisted in each case that their lands were dominant lands and would not be benefited by reason of the construction or improvements made or to be made by said district. All of the lands involved are described as agricultural and used for general farm purposes.

Evidence was heard upon the objections filed and the court made a personal examination of the lands sought to be annexed to the district, and entered an order providing that all of the lands involved in this appeal be annexed to the district.

The error chiefly relied upon by each and every one of the appellants is that the proofs are not sufficient to show any benefits to their particular lands which would justify the order of the court annexing the same to said district.

Section 58 of the Levee Act provides: "Any land lying outside of the drainage district as organized, the owner or owners of which shall thereafter make connection with the main ditch or drain or with any ditch or drain within the district as originally organized, or as added to by annexations, or whose lands are or will be benefited by the original work of such district, or by any additional work con-

structed by order of court, in said district, shall be deemed to have made voluntary application to be included in such drainage district; * * *."

The Pigeon Creek district comprises about 12,000 acres of land lying in the watershed of a natural stream called Pigeon creek. At a point near the south edge of the village of Cissna Park and about two miles north of appellants' lands, a branch of the main ditch called lateral No. 1 turns off south and extends in a southerly and westerly direction to the north line of appellants' lands. About a half mile north of the appellants' lands a branch called sublateral No. 1 extends south to the north line of the Ralph French lands. The district was organized in 1940, and the ditches completed in October, 1942.

There are four sets of objections representing four different tracts of land involved in this appeal. Charles Frank, one of the appellants, owns 170 acres of land sought to be annexed. It consists primarily of a quarter section lying immediately southeast of the southeast corner of the district. Directly northwest, within the district, and cornering on the Frank lands is a quarter section owned by one L. D. Newcombe, spelled on the plats of the district as "Newkomm." Frank testified that his land is higher than the lands to the west of him; that his outlet for drainage is through three strings of tile which drain a series of ponds; that two of these lines cross the Newcombe farm and formerly emptied into the channel of the old ditch; that with his consent an arrangement had been made with Newcombe for closing up the old channel and extending his tile to the new channel. It was admitted by Frank that he had at times been compelled to replant corn and resow beans on his farm because of high water. The extensions from the old ditch to the new sublateral No. 1 were in distance about 70 and 175 feet. Newcombe testified to such agreement and stated the new trench had been dug for laying the title in the extension ditch but that bad

weather had prevented the completion of the job. He further testified that he and Frank were doing the work together; that he and Frank were to pay the expense of the extensions fifty-fifty by agreement; that the construction of sublateral No. 1 was of benefit to the Frank farm because the lateral would carry away the water quickly, which was not possible before.

The evidence, while conflicting in some respects, does prove that Frank is making connection with sublateral No. 1 within the district and also that his lands will be benefited by the improvement. We find from the testimony submitted that the tile drains on the Frank lands have been or will be connected at their outlet with the ditches of the district by the drainage improvement. *Minnie Creek Drainage Dist.* v. *Streeter,* 327 Ill. 236; *Gar Creek Drainage Dist.* v. *Wagner,* 256 Ill. 338.

The Ralph French quarter section lies immediately south of the Newcombe farm and is contiguous to the south line of the district. The upper end of sublateral No. 1 is completed to the north line of his quarter section. A highway known as route 49 runs east and west between the Newcombe and the French tracts. One Sam Winger testified that he is now the owner of said farm. A natural creek crosses the land from what is termed the Springdale road on the south, in a crooked course but generally in a northwesterly direction to the upper end of sublateral No. 1 on the north. Winger testified there were four strings of tile which drain the farm into this small stream. At the outlet they are from one and a half to two feet above the bottom of the ditch. In his opinion the construction of sublateral No. 1 would not benefit the farm. He did not know about crops raised on the farm in past years, nor had he ever seen the condition of the old water course before the new construction of sublateral No. 1. Ralph French, the former owner of this farm and in whose name objections were filed, did not testify.

It appears in the testimony that the land along both sides of the natural stream is low and has been subject to overflow during flood periods. Also, that there are ponds on the tract. Witnesses for objectors testified that the water from the natural stream had been out of its banks at different times during the past years, but that the water rose quickly and disappeared quickly. There is further evidence that the flood waters at times had covered the bridges on the highway designated as route 49, and also over the bridge on the Springdale road.

R. O. Hollister, the engineer for the district, testified that he had made an investigation of the French lands with reference to floods before the work in the new district was started. He stated that the natural channel did not have sufficient capacity to carry the water which would overflow on the French land as a result of the lack of a good outlet. Louis Newcombe testified that the construction of sublateral No. 1 resulted in preventing flooding on his farm just north of the French lands and had kept the water from flooding so much on the French lands. Hollister further stated that the period of high water in that neighborhood usually lasted for several days; that the biggest floods were in the spring of the year and prevented getting crops out and in.

Hollister also submitted in detail the nature of the improvements known as lateral No. 1 and sublateral No. 1. He testified that the outlets of the original ditches were not sufficient to carry the water and in flood times the water spread out all over the surrounding lands; that since the completion of the improvement, the new channel had done a good job of taking care of the water. He stated, as to sublateral No. 1, that the old channel was very crooked with more or less trees and brush in the ditch; that sections of the ditch were badly infested with willows; that the upper section of lateral No. 1 for the last half mile was literally full of trees and brush. The improvement of these

laterals consisted in widening, straightening and deepening the natural channel. The ditch was straightened to 50 per cent of its former length, the flow line lowered 2.89 feet, and all the trees and brush cleared from the channel.

We believe the proofs clearly show that the French lands were benefited, particularly by the construction of sublateral No. 1 and generally by the entire improvement made in the district and the reduction of the amount of overflow on the farm.

What has been said of the French tract is in a general way applicable to the piece of land known as the "Laubscher girls' eighty." This tract lies immediately west of the French lands. The upper end of lateral No. 1 ends at the north line of the eighty acres. There was testimony of floods and overflow as well as ponds upon the land. The testimony of the engineer, above recited, also applied to this tract. We believe the proof shows benefits to this eighty-acre tract similar to those affecting the French lands.

The proof of overflow or of benefits to the 240-acre tract belonging to the John Laubscher heirs is not so satisfactory. The land is located immediately south of the "Laubscher girls' eighty" and the French lands. The north line of the farm is about one-half mile from the upper end of lateral No. 1 south and sublateral No. 1. Engineer Hollister testified that the decrease in the flood water at the outlet of the tile would increase the efficiency of the tile system and thereby benefit the land. However, he said he had never been on the farm to study flood conditions but had merely observed them in driving along the adjoining highway. Arthur Luethe, a neighboring farmer, stated that before the new district ditch was dug parts of the 240-acre tract were subject to overflow in times of high water, without stating where or how much or any details.

Ben Laubscher, one of the heirs, and several of his neighbors testified that the farm was completely drained and tiled and that no water had stood on the tract since

it was tiled. Laubscher further testified in detail as to the amount of crops raised on the land during the past five years; that the land was much higher than the streams which empty into the two laterals of the district; that the tract is drained by three tiles with satisfactory outlets in the natural streams on other lands and that there were no creeks or natural watercourses across their land.

We believe the district failed to show by the weight of the evidence that this 240-acre tract had been materially benefited by the work of the district. To warrant annexation of unconnected lands, the burden is on the drainage district to prove material benefits to such lands. (*Comrs. of Sangamon and Drummer Drainage Dist.* v. *Houston,* 284 Ill. 406.) In the case of *Comrs. of Inlet Swamp Drainage Dist.* v. *Cooper,* 274 Ill. 77, it was announced: "To justify the connection of lands with a drainage district, under section 58 of the Levee Act, there must either be a connection by the owners of the lands sought to be annexed, or benefits to such lands." In the same case, this court approved the following language taken from *People ex rel. Wilcox* v. *Barber,* 265 Ill. 316: "In order to establish that a tract of land lying outside a drainage district has been connected by the owner with the ditches of the district it is not sufficient to merely show that the waters from that tract ultimately pass into and through the district ditches, but it must further appear that an artificial ditch has been constructed leading from that land directly into the district ditch or into some ditch which has been theretofore artificially connected with the drainage ditch."

In the *Sangamon and Drummer Drainage District case* it was held: "The mere fact that the flow of water in a natural water-course into which tile drains empty has been accelerated is not sufficient proof of benefits to the lands drained by the tile to warrant the annexation of such lands to a drainage district. It must further appear that the

lands, when adapted only for agricultural purposes, have been thereby rendered more productive and consequently more valuable."

The petitioners and the appellants have in a measure directed their testimony along different lines. The district, relying upon their engineer and other witnesses, has sought to show benefits by reason of larger and better outlets for the natural streams and the tile; the marked acceleration in the flow of the water and its ability to get away faster; the reduction and diminishing of the flood waters, and the increase in the efficiency of the tile systems.

The appellants have attempted to show comparative productivity of the lands involved and effect upon market values of the same, based upon their observation of crops grown on the lands over a number of years. The opportunity for comparing the crops and values before and after the construction of the drainage district ditches has not received a fair test because of the time-element. The work in the district was completed about October, 1942. The petition to annex lands was filed in November, 1942, and the case tried on objections during the months of January and February, 1943.

Summing up the views of this court on the four tracts of land involved in this appeal, we believe the lands of Charles Frank described as the west 10 acres of the southeast quarter of the northwest quarter, and the southwest quarter of section 13, were properly ordered annexed to the appellee drainage district for the reasons hereinabove stated and that his objections should be overruled.

Being convinced from the testimony that the land known as the French farm, described as the southeast quarter of section 14, and the premises known as the "Laubscher girls' eighty" described as the east half of the southwest quarter of section 14, have been subject to overflow and floods in past years sufficient to cause the water in the

natural water courses across said lands to rise out of their banks and spread out over the surrounding lands, and that the improvements made by the drainage district will benefit said lands, we find that the county court was fully justified in annexing said lands to the appellee drainage district and in overruling the objections of said appellants.

For the reasons above advanced, we find that the county court erred in annexing the 240-acre tract owned by the Laubscher heirs, described as the northwest quarter and the west half of the northeast quarter of section 23, to the drainage district. All of the lands above described are located in township 24 north, range 14 west of the 2d principal meridian in Iroquois county.

The order of the county court of Iroquois county is, therefore, affirmed in part and reversed in part and the cause remanded for the purpose of entering judgment consistent with the views herein expressed.

*Affirmed in part and reversed in part*
*and remanded, with directions.*