SIXTH DIVISION

September 2, 2005

No. 1-04-2526

MIDLAND PROPERTIES COMPANY,  ) Appeal from the

  ) Circuit Court of

  ) Cook County

Plaintiff-Appellant,  )

  )

  ) No. 02 CH 15653

v.  )

  )

  )

ACME REFINING COMPANY, and THE CITY  )

OF CHICAGO, a Municipal Corporation, ) Honorable Dorothy Kirie

  ) Kinnaird

Defendants-Appellees. ) Judge Presiding

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

This case involves ownership of a small strip of land (the Strip) located on the west side of Racine Avenue in Chicago, Illinois.  Acme Refining Company (Acme) has used the Strip since 1988, when it purchased land adjoining the Strip.  In 1997, Midland Properties Co. (Midland) acquired a quitclaim deed purporting to convey title to the Strip.  Midland initiated this action seeking a judgment declaring that Midland owned the Strip and seeking to eject Acme from its use of the Strip.  The circuit court of Cook County entered summary judgment in favor of Acme and the City of Chicago (City), finding that the City held fee simple title to the Strip and that the City did not abandon this interest.  We affirm.

BACKGROUND

Prior to 1865, the Robbins family owned the Strip.  On August 21, 1865, the city council passed an ordinance (1865 Ordinance) that extended and widened Ullman Street (currently Racine Avenue) (Ullman Extension).  This extension encompassed the Strip.  The city council confirmed the extension on October 16, 1865 (1865 Assessment).  The Chicago Fire of 1871 destroyed all public records or recorded documents relating to the Ullman Extension other than the 1865 Ordinance and 1865 Assessment. 

In 1870, George Robbins partitioned amongst his heirs a tract of land that purported to include the Strip.  However, in 1872, the City adopted the Peltzer Atlas to reflect the official legal boundaries of all of its streets.  The Peltzer Atlas, which showed the Strip as part of Ullman Street, was later used to create the City's 80 Acre Maps, the current official maps charting the City's streets.  Both the Peltzer Atlas and the City's 80 Acre Map cite to the 1865 Ordinance and the 1865 Assessment as authority for including the Ullman Extension as part of the City's streets. 

On April 2, 1880, the City passed an ordinance (1880 Ordinance) granting the Robbins heirs permission to use an area that included the Strip for railroad purposes.  The ordinance subjected the grant to "all ordinances now existing" and conditioned the grant on the Robbins heirs agreeing to maintain the portion of Ullman Street on which the railroad tracks were to be laid, including the five feet of "street" on "each side" of the tracks.  The grant was also conditioned on the Robbins heirs dedicating to the City a 24-foot-wide strip of land located along the east side of Ullman Street.  The Robbins heirs made the dedication on August 5, 1880, noting in the dedication that the 24-foot strip was to become part of the existing 66-foot width of Ullman Street. 

On June 25, 1880, the Robbins heirs granted a railroad company an easement to use the Strip (Railroad Easement).  In 1902, the Robbins heirs conveyed to James Miles land purportedly including the Strip, subject to the Railroad Easement.  Subsequent conveyances that purported to include the Strip were also made subject to the Railroad Easement.  

In 1963, the Central Manufacturing District Trust (CMD Trust) conveyed to a predecessor in Acme's chain of title land that included Acme's parcel--but not the Strip.  Acme purchased its parcel in 1988.  

Then, in 1995, CMD Trust purported to convey title to the Strip by quitclaim deed to Schultze & Burch Biscuit Co. In 1997, Schultze & Burch purported to convey the Strip to Midland by quitclaim deed. 

From the time it purchased its parcel in 1988, Acme used the Strip to access its bordering property.  On September 4, 1997, Midland filed a complaint for declaratory judgment against Acme contending that it acquired title to the Strip by quitclaim deed.  Midland sought a judicial declaration that it held fee simple title to the Strip and sought to eject Acme from possession of the Strip.

At the bench trial on September 22, 2000, Acme argued that the City owned the Strip; however, the City was not made a party to the suit.  Midland presented testimony that a chain-of-title search of Chicago Title Co.'s tract books from 1870 to 1916 uncovered no deeds of conveyance from any record owner of the Strip to the City.  Acme countered with testimony that the Peltzer Atlas and the City's 80 Acre Map showed the Strip as part of Ullman Street.  The trial court held that the City owned the Strip and entered judgment in favor of Acme.

On appeal, this court found the evidence insufficient to prove that the City owned the Strip.  
Midland Properties, Co. v. Acme Refining Company
, 1-00-3719 (unpublished order pursuant to Supreme Court Rule 23).  We reversed the judgment against Midland and remanded the cause to add the City as a necessary party and to afford the City an opportunity to present evidence of its ownership of the Strip.

On remand, Midland moved for summary judgment against the City.  Midland contended that the City had merely obtained an easement to use the Strip for highway purposes.  Midland referred to trial testimony that the railroad used the Strip for its tracks from 1880 to 1994, and the City did not use the Strip as a street for that time.  Midland contended that the City had thus abandoned its easement to use the Strip as a street.  

On February 18, 2003, the City filed a cross-motion for summary judgment.  The City submitted evidence in the form of the 1865 Ordinance and 1865 Assessment and their related documents showing that it had complied with the procedures for condemnation set out in "An Act to reduce the Charter of the City of Chicago and the several acts amendatory thereof into one act, and to revise the same" (1863 Ill. Private Laws §1, at 40 
et
 
seq
.) (1863 Act), and had thereby acquired fee simple title to the Strip.  The City included the 1863 Act in its motion.  That statute granted the Chicago city council the power "[t]o lay out public streets, alleys, lanes, and highways, *** and extend, alter, widen, contract, straighten, and discontinue the same" and set forth the condemnation procedures to be followed in order to do so.  1863 Ill. Private Laws §1, at 82.  The 1863 Act further provided that "[i]n all cases" the title to land so taken and condemned "shall be vested absolutely in the [C]ity, in fee simple."  1863 Ill. Private Laws §15, at 88. 

The circuit court found that the City met the requirements for condemnation set forth in the 1863 Act and, in accordance with that statute, the City obtained fee simple title to the Strip.  As a consequence, the purported conveyance of title to the Strip from Robbins to his heirs and subsequent conveyances in that chain of title had no force and effect.  The circuit court also found that Midland had not provided sufficient evidence to establish that the City abandoned its fee simple interest in the Strip.  Accordingly, the court entered summary judgment for the City and Acme and against Midland on Midland's amended complaint.  Midland filed a timely notice of appeal from that order.

ANALYSIS

This court reviews the circuit court's grant of summary judgment 
de
 
novo
.  
Morris v. Margulis
, 197 Ill. 2d 28, 35 (2001).  Summary judgment is appropriate where the pleadings, depositions, affidavits, admissions, and exhibits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 333 (1996). 

In Illinois, a public highway may be established "by condemnation in the mode prescribed by statute."  
Department of Transportation v. Thomas
, 59 Ill. App. 3d 684, 688 (1978).  Here, the City presented evidence in the form of the 1863 Act establishing the right of the City to condemn land for public streets pursuant to specified special assessment procedures.  The City also presented evidence establishing that the City followed the procedures set forth in the 1863 Act. 

 In this appeal, Midland does not dispute that the City followed the procedures set forth in the 1863 Act to condemn the Strip.  However, Midland contends that special assessment proceedings such as the ones provided for in the 1863 Act result only in the acquisition of an easement by a municipality.  Midland relies on 
Sears v. City of Chicago
, 247 Ill. 204 (1910), and 
Harris v. City of Chicago
, 162 Ill. 288 (1896), in support of its contention.  We find neither case supports Midland's position.

In 
Sears
, 247 Ill. at 214-18, the court needed to determine title to a part of Dearborn Street.  
The court concluded that the City held only an easement pursuant to the condemnation of the land for the street; however, the court did not specify which statute authorized the condemnation.  
Sears
, 247 Ill. at 216-18.  

Similarly, 
Harris
, 162 Ill. at 296, concerned a judgment of condemnation that restricted the City's interest in the property to an easement.  There, the court referred to prior case law holding that under an 1872 statute, a proceeding by a city against a railroad company to condemn part of its right-of-way and tracks for the extension of a street allowed only for the acquisition of an easement to cross over such right-of-way and tracks.  
Harris
, 162 Ill. at 296; 
Illinois Central R.R. Co. v. City of Chicago
, 141 Ill. 586, 594-96 (1892).     

In condemnation proceedings, the statute authorizing the condemnation controls and determines the extent of the interest the municipality may acquire.  
County of Wabash v. Partee
, 241 Ill. App. 3d 59, 72 (1993); 
Forest Preserve District of Cook County v. City of Chicago
, 159 Ill. App. 3d 859, 861 (1987).  In contrast to 
Sears
 and 
Harris
, where the condemnation proceedings resulted solely in the acquisition of an easement, the 1863 Act expressly provided that, following the proper condemnation procedures, "[i]n all cases" title is "vested absolutely in the [C]ity, in fee simple."  1863 Ill. Private Laws § 15, at 88.  Accordingly, the legislature fully empowered the City to take fee simple title, and the 1863 Act provided for the vesting of such title upon the completion of the delineated condemnation procedures.  

Despite the clear language of the 1863 Act, Midland contends that the 1863 Act cannot be construed to vest fee simple title in the City because the statute conflicts with three other statutes that were in effect at the time the City condemned the Strip.  To give effect to the 1863 Act, Midland contends, would be in derogation of an 1845 statute requiring the recording of a plat in order to lay out or make additions to a town (Ill. Rev. Stat. 1845, ch. 25, § 17 
et
 
seq
.) (Predecessor Plat Act), an 1845 statute requiring that all instruments affecting title be recorded (Ill. Rev. Stat. 1845, ch. 24, § 22) (Predecessor Conveyances Act), and a prior statute establishing the right of eminent domain (Ill. Rev. Stat. 1858, ch. 24, §1 
et
 
seq
.) (Eminent Domain Act).  Midland contends that these statutes set forth additional procedures the City was required to follow before it could be vested with fee simple title to the Strip and that the 1863 Act conflicts with them because it provides for the vesting of fee simple title without expressly requiring compliance with these additional procedures.  We disagree.

Where there is an alleged conflict between statutes, the court has a duty to interpret the statutes in a manner that avoids any inconsistencies and gives effect to both statutes, where such an interpretation is reasonably possible.  
Ferguson v. McKenzie
, 202 Ill. 2d 304, 311-12 (2001).  Here, it is possible to construe the relevant statutes in a consistent manner and give effect to them all.

The 1863 Act set forth special assessment procedures for the City to follow in order to condemn land and thereby acquire fee simple title to that land.  See 1863 Ill. Private Laws §§ 1 through 19, at 82-88.  The Eminent Domain Act, by contrast, set forth procedures whereby an appropriate person could petition the court for the right to take private property that could not be obtained by purchase.  See Ill. Rev. Stat. 1858, ch. 24, §1.  The Eminent Domain Act did not state that it provided the exclusive means for acquiring public property (see generally Ill. Rev. Stat 1858, ch. 24, §§ 7, 15, 19); accordingly, we find that its terms may be harmoniously construed with the 1863 Act to provide an alternate method whereby the City could condemn private property for use as a public street.

The Predecessor Plat Act also does not conflict with the 1863 Act.  The Predecessor Plat Act required any county commissioner or other person who wished to lay out a town or an addition or subdivision of out-lots to cause a survey and plat to be made, acknowledged, and recorded (Ill. Rev. Stat. 1845, ch. 25, §§ 17 through 20).  The statute concerned powers vested in the county commissioner, whereas the 1863 Act concerned powers vested in the city council.  See generally 
Tucker v. Bunger
, 108 Ill. App. 3d 227, 228 (1982) (distinguishing between 1845 statute granting power to the county commissioner to open new roads and 1849 laws providing authority to township highway commissioners to lay out new roads);  1863 Ill. Private Laws §1, at 82.  

Further, the Predecessor Plat Act did not provide that it was the exclusive means for a municipality to acquire fee simple title to land.  See generally Ill. Rev. Stat. 1845, ch. 25, § 21.  Rather, the 1863 Act may be consistently construed with the Predecessor Plat Act as providing a different mode for a municipality to obtain fee simple title to land to be used as a public street.  See, 
e.g
.,  
Thomas
, 59 Ill. App. 3d at 689 (distinguishing between a highway that is established by condemnation in compliance with a statute and a highway that is established by statutory dedication and noting that "[s]tatutory provisions relating to plats merely provide a different mode by which an owner's intention to dedicate his land may be carried out"); see also 
Kirnbauer v. Cook County Forest Preserve District
, 215 Ill. App. 3d 1013, 1020 (1991); 
Terwelp v. Sass
, 111 Ill. App. 3d 133, 137 (1982) (both cases noting that a highway can be established by statute, dedication or prescription).

Nor need the 1863 Act be construed to conflict with the Predecessor Conveyances Act.  Midland contends that the 1863 Act conflicts with section 22 of the Predecessor Conveyances Act, which required that "[d]eeds and other instruments relating to, or affecting the title to real estate *** be recorded in the county in which such real estate is situated."  Ill. Rev. Stat. 1845, ch. 24, §22.  However, the provision did not control the type of title the City could acquire through condemnation proceedings.  Rather, statutes providing for the recording of instruments affecting title to real estate are intended to provide notice of such instruments; they do not operate to vest or create title.  See, 
e.g
., 
Williamson v. Williamson
, 306 Ill. 533, 540 (1923) ("Recording the deed was not essential to vest the title in the grantee, but served as notice to others that the title was in defendant."); 
Glos v. Bain
, 223 Ill. 343, 345-46 (1906) (statute requiring recording was intended to provide notice but did not operate to make a bad title a good one).  Thus, the Predecessor Conveyances Act did not alter the fact that the 1863 Act operated to vest fee simple title in the City upon completion of the specified condemnation procedures.
(footnote: 1)
 At the initial trial, Acme provided evidence of the City's interest in the Strip in the form of the Peltzer Atlas and the City's 80 Acre Map, both of which showed the Strip as part of Ullman Street with reference to the 1865 Ordinance and 1865 Assessment.  
On remand, the City introduced the 1863 Act as evidence of its power in 1865 to condemn property in order to extend public streets.  The City further established through the 1865 Ordinance and 1865 Assessment and their related documents that it had followed the condemnation procedures specified in the 1863 Act in condemning that part of Ullman Street which included the Strip.  Pursuant to the 1863 Act, the completion of the specified procedures vested fee simple title to the condemned property in the City.  
Accordingly, we conclude that the circuit court did not err in finding that the City was vested with fee simple title to the Strip in 1865 pursuant to the 1863 Act. 

Having concluded that the City was vested with fee simple title to the Strip, we further uphold the circuit court's finding that Midland failed to establish that the City abandoned its interest in the Strip.  
Midland bases its argument of abandonment entirely on its contention that the City held only an easement over the Strip and provides no evidence that the City intended to relinquish its fee simple interest.  
Department of Conservation ex rel. People v. Fairless
, 273 Ill. App. 3d 705, 716 (1995). 

For these reasons, we conclude that the circuit court properly granted summary judgment on Midland's amended complaint in favor of the City and Acme and affirm its judgment to that effect. 

Affirmed.
 

TULLY and O'MARA FROSSARD, JJ., concur
.

FOOTNOTES
1: Midland does not contend that section 23 of the Predecessor Conveyances Act operated to void the City's title under the facts of this case.  See Ill. Rev. Stat. 1845, ch. 24, §23.