SECOND DIVISION
March 28, 2006

No. 1-05-1301

| | | |
|---|---|---|
| CITY OF DES PLAINES, an Illinois home-rule municipality, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee | ) ) | |
| v. | ) ) | |
| RICHARD and BARBARA REDELLA, KAREN SECCO, LESLIE BOULAY, DAVID RIEKER, and JANUSZ SOSYNSKI, | ) ) ) ) | |
| | ) ) | Honorable Martin Agran, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

At issue in this case is whether Trailside Lane, a private road, was properly declared a public highway pursuant to section 2-202 of the Illinois Highway Code (Code) (605 ILCS 5/2-202 (West 2002)). The City of Des Plaines (City) sought a declaratory judgment from the trial court that Trailside Lane had become a public highway pursuant to the 15-year public use provision of section 2-202 of the Code. The trial court granted summary judgment in favor of the City.

On appeal, defendants Richard and Barbara Redella, Karen Secco, Leslie Boulay, David Rieker, and Janusz Sosynski contend the trial court erred in granting summary judgment because: (1) section 2-202 of the Code is merely "definitional;" (2) even if the easements allowing the Woods Drive residents to use Trailside

Lane terminated, the defendants retained fee simple title to the land; (3) section 2-202 of the Code cannot be interpreted to allow the City to take private property without compensating the owners; and (4) material questions of fact existed.  We reverse and remand for further proceedings.

FACTS

This case concerns five contiguous lots located immediately north of Ballard Road in a north-south line.  In 1949 the joint owners of the entire parcel sold off the northernmost of the five lots.  At the time of sale, they granted an easement over the western edge of the remaining four lots as a means of ingress from and egress to Ballard Road.  The easement was to cease "at such time that a hard surfaced roadway is constructed along either the Westerly or Northerly boundaries of the real estate."  Trailside Lane is completely within the boundaries of the easement.

In 1953 the owners conveyed lot four, granting an appropriate easement over the remaining property for purposes of access to Ballard Road.  The easement was to cease and terminate "at such time as a hard surface roadway is constructed along the Westerly boundaries of the real estate."  When the owners conveyed a portion of lot one to the Illinois State Toll Highway Commission in 1957, they reserved the existing easement.

2

The record contains a few deeds from subsequent transfers of the five lots. The deeds that are included make no specific mention of the easement. However, a subdivision plat, filed in 1959 when lot five was divided into four residential lots, contains a notation next to Trailside Lane indicating that it was a "roadway easement." The subdivision plat showed Trailside Lane as the only means of ingress and egress to and from Forest Lane and Ballard Road. Forest Lane was subsequently renamed Woods Drive. Trailside Lane dead-ends into Woods Drive, a publicly dedicated cul-de-sac. Defendants, the current owners of lots one through four, live on Trailside Lane.

In 2000, defendants resurfaced part of Trailside Lane and installed "speed bumps" on the road. On December 12, 2002, the City filed a declaratory judgment action against defendants, asking the trial court to declare Trailside Lane, pursuant to section 2-202 of Code, had become a part of the City's highway system. The City contended the residents of the Woods Drive subdivision had traversed Trailside Lane since 1959 in order to access Ballard Road, which made the road a publicly dedicated right-of-way under section 2-202 of the Code. The City also contended that for more than 25 years, it had plowed snow, patched pot holes, and picked up branches on Trailside Lane.

An affidavit from Angelo Bernar, Assistant Director of the

1-05-1301

City of Des Plaines Public Works Department, was attached in support of the City's complaint. Bernar stated he had been employed by the department for more than 35 years. According to Bernar, the City had continually plowed snow, patched pot holes, repaired water mains, trimmed bushes, and picked up branches on Trailside Lane since the late 1960's.

Defendants filed a counterclaim seeking a declaratory judgment that: (1) the easement remained in full force and effect; (2) the easement property is owned in fee simple by each defendant relative to the portion of the easement property on their respective lots; (3) Trailside Lane, as part of the easement property, is owned in fee simple by each defendant relative to the portion of the easement property on their respective lots; and (4) Trailside Lane is a private street and not a publicly dedicated right-of-way or otherwise owned by the City or part of the City's highway system. In the alternative, defendants asked the trial court to declare the City must pay them an amount representing the fair market value of their respective fee simple interests in Trailside Lane. Defendants also asked the trial court to determine on what date the conversion occurred and make an award to the defendants for all costs and expenses they incurred relative to Trailside Lane.

Defendants contended in their counterclaim that the City had

4

never indicated or asserted any ownership rights over Trailside Lane. Specifically, defendants contended the City had never paved, installed improvements, or otherwise maintained Trailside Lane, as required by the City's code for all City-owned roadways. Defendants also contended the City actually acknowledged the private nature of Trailside Lane during a Des Plaines City Council committee meeting.

In support of their counterclaim, defendants attached the minutes from a committee meeting of the City Council held on February 28, 2000. During the meeting, Alderman Brookman recommended that the Council continue to provide existing City services to certain "private streets," including Trailside Lane. On March 6, 2000, the City Council adopted Alderman Brookman's recommendation. Defendants also attached a bill from Jacobs & Son, Inc. in the amount of $9,000 for the paving of Trailside Lane in 2000.

On November 19, 2004, the City filed its motion for summary judgment. The City contended the easement referenced in the 1949 warranty deed ceased and terminated by its own terms after Trailside Lane became a hard-surfaced roadway. The City contended that because the residents of the Woods Drive cul-de-sac had used the hard-surfaced Trailside Lane for at least three decades to access Ballard Road after the easement ceased,

Trailside Lane had become a public road by virtue of section 2-202 of the Code.  The trial court granted the City's motion for summary judgment.  The trial court did not specifically rule on the merits of defendants' counterclaim.  Defendants appealed.

DECISION

Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when taken in the light most favorable to the nonmovant, show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2002); Midland Properties Co. v. ACME Refining Co., 361 Ill. App. 3d 180, 183, 836 N.E.2d 95, 98 (2005).  Our review of the circuit court's grant of summary judgment is *de novo*.  Midland Properties Co., 361 Ill. App. 3d at 183.

I.  Section 2-202

Defendants contend the trial court erred in entering summary judgment in favor of the City because section 2-202 of the Code is merely "definitional" for the purposes of the other sections of the statute and does not affect private property rights. Defendants contend the definition of a highway contained in section 2-202 does not constitute an operable provision of the Code, but rather governs the application of the operable provisions in other sections.  See New York Life Insurance Co. v.

Murphy, 388 Ill. 316, 58 N.E.2d 182 (1944).

Defendants also contend a review of the plain language of the two earlier codifications of section 2-202 demonstrates the current version of the section is meant to be definitional. Both the 1931 and 1953 versions of section 2-202 state that roads which meet the statutory criteria are "hereby declared to be public highways." Ill. Rev. Stat. 1953, ch. 121, par. 152; Ill. Rev. Stat. 1931, ch. 121, par. 152. This affirmative declaratory provision is absent from the current version of section 2-202. See 605 ILCS 5/2-202 (West 2002). According to defendants, the omission evidences a clear legislative intent to substantively change the operation of section 2-202.

"The primary goal of statutory construction is to ascertain and give meaning to the legislature's intent." Lauer v. American Family Life Insurance Co., 199 Ill. 2d 384, 388, 769 N.E.2d 924, 926 (2002). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." Lauer, 199 Ill. 2d at 388.

Section 2-202 of the Code defines a highway as:

> "any public way for vehicular travel which
> has been laid out in pursuance of any law of
> this State, or of the Territory of Illinois,
> or which has been established by dedication,

or used by the public as a highway for 15 years, or which has been or may be laid out and connect a subdivision or platted land with a public highway and which has been dedicated for the use of the owners of the land included in the subdivision or platted land where there has been an acceptance and use under such dedication by such owners, and which has not been vacated in pursuance of law."  605 ILCS 5/2-202 (West 2002).

Contrary to defendants' contentions, the purpose of section 2-202 is well-settled.  Under Illinois law, a public highway can be established by any of three methods: by statute; by dedication; or by prescription.  People ex rel. Carson v. Mateyka, 57 Ill. App. 3d 991, 997, 373 N.E.2d 471, 475 (1978).  Several courts in Illinois have recognized that "a public highway may be established through a prescriptive easement pursuant to section 2-202 of the Illinois Highway Code."  See e.g. County of Kendall v. Rosenwinkel, 353 Ill. App. 3d 529, 544, 818 N.E.2d 425, 438 (2004); Alpine Acres Homeowners Assoc. v. Leonard, 213 Ill. App. 3d 634, 642, 571 N.E.2d 1150, 1155 (1991); Mateyka, 57 Ill. App. 3d at 997-98.  These cases were decided on the wording of the current section 2-202.  We find section 2-202 of the Code

8

is not merely "definitional" in nature.

II.  Just Compensation

Defendants contend the trial court erred when it granted summary judgment because section 2-202 of the Code may not be interpreted to allow the seizure of Trailside Lane by the City, a government entity, without compensation to the owners of the easement property.

The takings clauses of the United States and Illinois Constitutions express a well-settled prohibition on the government taking the private property of its citizens without due process and just compensation.  See U.S. Const., amend. V; Ill. Const. 1970, art. I, §5.

Defendants contend that rather than commence an eminent domain proceeding where the owners would be afforded due process and awarded compensation for their confiscated property, the City sought to improperly seize the property by way of section 2-202.  Contrary to defendants' contention, the trial court's ruling granted the City only a prescriptive easement over the road, not fee title to the easement property itself.  See Minnie Creek Drainage District v. Streeter, 327 Ill. 236, 245, 158 N.E. 383, 386 (1927); Hudgens v. Dean, 53 Ill. App. 3d 126, 131, 368 N.E.2d 944, 948-49 (1977).  Granting a public prescriptive easement over a private road pursuant to section 2-202 of the Code does not

9

1-05-1301

necessarily constitute a taking under the Illinois or United States constitutions.

While no case in Illinois has directly addressed this issue, courts in other states have determined compensation is not required when a private road is converted to a public highway by prescriptive easement. See e.g., Algermissen v. Sutin, 61 P.3d 176, 185 (N.M. 2002) ("The general rule is that acquisition of an easement by prescription is not a taking and does not require compensation to the landowner); Board of County Commissioners of Saguache County v. Flickinger, 687 P.2d 975, 984 (Colo. 1984). But See Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F. Supp. 2d 206, 217-27 (D.R.I. 2002).

In Flickinger, the Colorado Supreme Court recognized the defendant originally had a fee interest in the private road across his property, subject to certain conditions imposed by state law. By virtue of section 43-2-201(1)(c), a private road could be declared a public highway if the public used the road without interruption for the statutory period of twenty years. Flickinger, 687 P.2d at 984. The effect of the section was simply to require an owner desirous of retaining his interest in the private road to prohibit continuous public use, or to manifest his objection to it. "The failure of the [defendants] to comply with these statutory conditions resulted in the loss of

their interest in the road as a private road and in the creation of a public highway, with the result that the application of section 43-2-201(1)(c) to the road did not constitute a governmental taking for which compensation was required." Flickinger, 687 P.2d at 984-85.

We find persuasive the Colorado Supreme Court's decision in Flickinger. If the trial court did not err by declaring Trailside Lane a public highway pursuant to section 2-202 of the Code, it was proper to do so without compensating defendants.

III. Prescriptive Easement

In order for a road to constitute a "highway" within the meaning of section 2-202, it must fall within one of the definitions of a highway set forth in that section. Leonard, 213 Ill. App. 3d at 642. The City does not contend defendants dedicated portions of Trailside Lane to the public, and there is no evidence in the record indicating Trailside Lane was laid out pursuant to state or territorial law. Therefore, Trailside Lane is not a public highway under the first two definitions contained in section 2-202. That leaves the central question in this case: whether Trailside Lane was properly deemed a public highway under the 15-year public use provision of section 2-202.

Under Section 2-202 of the Code, a private road becomes a public highway if used by the public for the requisite 15 year

1-05-1301

period.   605 ILCS 5/2-202 (West 2002).   "The requirements necessary to establish a public highway by prescription under the statute are the same as those necessary to establish a private easement by prescription."  Mateyka, 57 Ill. App. 3d at 997.   The use by the public must be adverse, exclusive, under a claim of right, continuous and uninterrupted, with the knowledge of the owner, but without his consent.  Sparling v. Fon Du Lac Township, 319 Ill. App. 3d 560, 563, 745 N.E.2d 660, 664 (2001); People ex rel. Kenney v. City of Goreville, 154 Ill. App. 3d 1091, 1097, 507 N.E.2d 1247, 1250-51 (1987);  Mateyka, 57 Ill. App. 3d at 997-98; Corbridge v. Auburn St. Hardware, Inc., 5 Ill. App. 3d 293, 296, 282 N.E.2d 196, 198 (1972).

To determine whether a road has become a public highway, courts look to whether the public generally had the free and unrestricted right to use the road.  People ex rel. Kenney, 154 Ill. App. 3d at 1097-98.

The establishment of an easement by prescription almost always is a question of fact.  Batchelder Co. v. Gustafson, 32 Ill. App. 3d 14, 18, 335 N.E.2d 565, 569 (1975), citing Peterson v. Corrubia, 21 Ill. 2d 525, 173 N.E.2d 499 (1961).

With respect to adversity, the claimant must show the use of the property was with the knowledge and acquiescence of the owner, but without his permission.  Sparling, 319 Ill. App. 3d at

12

563.  Where property has been used in an open, uninterrupted, continuous, and exclusive manner for the required period, adversity is presumed and the burden shifts to the party denying the prescriptive easement to rebut the presumption and show the use was "'under some license or indulgence inconsistent with the claim of right by the public.'"  People ex rel. Kenney, 154 Ill. App. 3d at 1097-98, quoting Neely v. Coffey, 81 Ill. 2d 439, 443, 410 N.E.2d 839, 841-42 (1980); Sparling, 319 Ill. App. 3d at 563.

The City contends the public use of Trailside Lane for more than 15 years by the residents of the Woods Drive cul-de-sac, the residents' invitees and guests, the U.S. postal service, City public works vehicles, police and fire vehicles, garbage pickup services, and newspaper delivery services, support the trial court's grant of summary judgment.

We find there are fact issues concerning whether the general public's use of Trailside Lane was exclusive.  "To establish exclusivity, it is unnecessary to show that only the claimant has made use of the way, because exclusive use means that the claimant's right to use the lane does not depend upon a like right in others. [Citation omitted].  However, exclusivity does require that the rightful owner be altogether deprived of possession."  Chicago Steel Rule Die & Fabricators Co. v. Malan Construction Co., 200 Ill. App. 3d 701, 707, 558 N.E.2d 341, 344

1-05-1301

(1990)(<u>Chicago Steel</u>).

Here, as in <u>Chicago Steel</u>, where a claim for a private easement was made, there was no allegation in the pleadings that the true owners were deprived of use or possession of Trailside Lane. "'A joint possession by two, even though the claim of each is adverse to the other, will not be disseizin [a deprivation of possession] unless the rightful owner is altogether deprived of possession.'" <u>Chicago Steel</u>, 200 Ill. App. 3d at 707, quoting <u>Towle v. Quante</u>, 246 Ill. 568, 576, 92 N.E. 967 (1910).

The City also contends unrebutted evidence of public maintenance on the road supported the trial court's decision to grant summary judgment. Public maintenance of a road is strong evidence that the roadway is in fact a public highway. <u>People ex rel. Kenney</u>, 154 Ill. App. 3d at 1098.

Defendants counter that issues of material fact exist as to whether the City actually performed maintenance on Trailside Lane, and to what extent such maintenance should be taken into account in light of the Woods Drive residents' use of the road.

Here, Bernar's affidavit stated the City had continually plowed snow, patched pot holes, repaired water mains, trimmed bushes, and picked up branches on Trailside Lane since the late

14

1-05-1301

1960's.  A public works record attached to the City's response to defendants counterclaim also reflects that Leslie Boulay and David Rieker, two of the defendants in this case, called the City and requested "salting" on Trailside Lane.  According to the record, a City truck was sent to salt the road.

While the defendants admitted in their verified answer to the City's amended complaint that the City made branch pickups on Trailside Lane, they contended a fee was paid for the service.  The defendants also stated in their response that they plowed, patched potholes, and otherwise maintained Trailside Lane at their own expense.  In support of their contentions, defendants attached a bill to their counterclaim in the amount of $9,000 for the pavement of Trailside Lane in 2000.  The bill was addressed to the Redellas.

Defendants also presented evidence indicating City services were routinely performed on both private and public streets.  Minutes of a committee meeting attached to defendants' counterclaim indicated Alderman Brookman recommended to the City Council that the City continue to provide existing services to certain "private streets," including Trailside Lane.  The City Council agreed.

Furthermore, the record indicates defendants paid property taxes on Trailside Lane.  While the fact that a road is assessed

15

and taxed as private property does not compel a finding that the road is not a public highway, it is a factor to be considered. Meade v. Commonwealth Edison Co., 48 Ill. App. 3d 312, 314, 362 N.E.2d 779, 781 (1977).

It is apparent the trial court considered no other issue but the applicability of section 2-202 of the Code. After carefully reviewing the record, we find material questions of fact exist regarding whether Trailside Lane was used by the public as a highway for 15 years.

IV. Termination of the Easements

In its summary judgment motion, the City contended the 1949 and 1953 easements, which allowed residents of the Woods Drive cul-de-sac to use Trailside Lane to access Ballard Road, had terminated decades earlier when Trailside Lane became a hard-surfaced roadway. The City contended because the residents of Woods Drive used Trailside Lane for more than 15 years after the easements expired, the road had become a public highway under section 2-202 of the Code.

Defendants initially contend on appeal that even if the 1949 and 1953 easements terminated by their own terms after Trailside Lane was hard-surfaced, the defendants retained title to the easement property itself. Because defendants retained title to the easement property, they contend it was improper for the trial

16

court to declare the road a public highway under section 2-202 of the Code.

We agree with defendants that they retained title to the easement property even if the easements had terminated. See Streeter, 327 Ill. at 245; Hudgens, 53 Ill. App. 3d at 948-49 ("even assuming [the road] did in fact become a public highway [pursuant to section 2-202 of the Code], it must be noted that only an easement and not fee title can be acquired by prescription"). However, the fact that defendants retained fee title to the easement property was irrelevant when determining whether Trailside Lane was properly declared a public highway pursuant to section 2-202 of the Code. See 605 ILCS 5/2-202 (West 2002).

Defendants contend there is an issue of material fact as to whether the easements ceased after the construction of a hard-surfaced road on Trailside Lane. While defendants admit residents of Woods Drive traversed Trailside Lane for decades, the defendants contend the use of the road was permitted pursuant to the easements. Defendants also contend that the absence of any express grant of the easement in the later deeds to the defendants is completely irrelevant and non-determinative because easements are intended to pass with the land upon which they are created and bind subsequent purchasers. See Flower v. Valentine,

1-05-1301

135 Ill. App. 3d 1034, 1039, 482 N.E.2d 682, 687 (1985).

In Mateyka, the court noted the disputed road was used by four classes of people: (1) adjoining landowners; (2) social invitees of the adjoining landowners; (3) people servicing the needs of the landowners; and (4) people entering the roadway by mistake. Mateyka, 57 Ill. App. 3d at 998. The court concluded the use of the road by the adjoining landowners was predicated upon the grant of an easement for road purposes in their respective deeds. The adjoining landowners and those who entered the roadway to reach their homes used the road with permission of the fee owner. Mateyka, 57 Ill. App. 3d at 998-99. Because the use of the roadway was by permission, the right to use never could ripen into a prescriptive right. It was not adverse use. Mateyka, 57 Ill. App. 3d at 998-99, citing Monroe v. Shrake, 376 Ill. 253, 256, 33 N.E.2d 459 (1941).

Here, as in Mateyka, Trailside Lane apparently was used by four classes of people: (1) the residents of Woods Drive; (2) social invitees of the Woods Drive residents; (3) people servicing the needs of the Woods Drive residents; and (4) people entering the roadway by mistake.

If the 1949 and 1953 easements were in effect, the Woods Drive residents' use of the road was permissive and could not ripen into a prescriptive right. See Mateyka, 57 Ill. App. 3d at

18

998-99.  If the easements ceased, the City still had the burden of satisfying the requirements of section 2-202 of the Code.

While the terms of the 1949 and 1953 easements clearly stated they were to terminate when a hard-surfaced roadway was constructed along the westerly boundary of the properties, the 1949 and 1953 grants are ambiguous as to whether the construction of a hard-surfaced roadway on the easement property itself would terminate the easements.  Questions of fact also exist as to whether the easements ceased because they were not properly identified in subsequent purchasers' deeds.

Moreover, it is unclear when Trailside Lane actually became a hard-surfaced roadway.  While the City contends the residents of Woods Drive had traversed over a hard-surfaced Trailside Lane for decades, nothing in the record supports this contention. Because of the ambiguity in the easements' terms, the uncertainty as to whether the easements were properly identified in subsequent deeds, and the uncertainty as to when Trailside Lane was actually paved, we find defendants raised a material issue of fact as to when and whether the easements ceased.

CONCLUSION

We conclude the City was not entitled to summary judgment as a matter of law because genuine issues of material fact remain as to whether Trailside Lane had become a public highway under

1-05-1301

section 2-202 of the Code.  See <u>People ex rel. Kenney</u>, 154 Ill. App. 3d at 1099.  We reverse the trial court's order granting summary judgment in favor of the City and remand this cause for further proceedings.

Reversed and Remanded.

SOUTH, and HALL., JJ., concur.